(88 App. Div. 492.)

## DE SANDO v. NEW YORK HERALD CO.

(Supreme Court, Appellate Division, First Department. December 11, 1903.)

1. LIBEL—PUBLICATION OF PHOTOGRAPH.

One publishing a photograph in connection with a libelous article referring specifically to it is responsible for the libel to him whose likeness is published, though another's name be printed beneath it, and the article states facts tending to show he is not the person referred to.

Patterson, J., dissenting.

Appeal from Special Term, New York County.

Action by Pietro De Sando against the New York Herald Company. From an interlocutory judgment sustaining a demurrer to the complaint, plaintiff appeals. Reversed.

The action is for libel published on October 6, 1901, in defendant's Sunday newspaper. The article complained of sets forth the career of Giuseppe Musolino, an Italian bandit, brigand, and murderer, and in connection therewith is printed a photograph of the plaintiff, referred to in the article as that of the outlaw whose name appears beneath it. The article in part is as follows:

"Musolino, the Famous Italian Brigand, Coming to America, but not, He Says, until His Revenge is Complete.

"Character Sketch of the Man Who for Nearly Three Years Has Kept Nearly 20,000 Soldiers Busy Seeking Him, Dead or Alive. From the Pen of a Friend of His Boyhood Days in Communication with Relatives in America, from Whom the Photographs of Himself and His Sweetheart Herewith Reproduced Were Obtained. Not Yet Ready to Come to America.

"Only Twenty-Six Years Old, His Deeds of Daring Have Already Made Him as Picturesque as Any Hero of Fiction. Driven to Crime, He Contends, by Political Injustice. Broke Jail After Having Been Convicted of Murder, of Which He Protested His Innocence. Two and a Half Years Ago He Began His Career of Vengeance on His Enemies."

There is also contained therein an account of Musolino's murder of a police officer, and an alleged autograph letter of the brigand in defense of his brigandage, obtained from his American relatives; and the article, among other things, states that the sole source of authentic information concerning the bandit is that offered by his confidential letters to his kindred and ac-

---

¶ 1. See Libel and Slander, vol. 32, Cent. Dig. § 103.

quaintances in America; and that "his portrait, which we print with this article," is from a recent photograph, and the only one known to be in existence in this country. "Musolino," the article states, "is still in Italy."

The complaint avers that by the publication the defendant "intended to and did convey the false, malicious, scandalous, defamatory, and libelous meaning that plaintiff was a murderer, a brigand, a fugitive from justice, and guilty of a felony"; and that the publication of plaintiff's portrait in connection with said article was false, malicious, and without probable cause; and said photograph was not obtained from Musolino's relatives, and was not a portrait of Musolino, as defendant well knew, but of the plaintiff; and the article and picture directly tended to injure the plaintiff, and hold him up as a bad character, and charged him with being a murderer, and conveyed the impression that he had been guilty of various crimes and felonies, and held him up to obloquy and disgraced him in the eyes of his fellow men. The defendant demurred to the complaint as not stating facts sufficient to constitute a cause of action, and from the interlocutory judgment entered sustaining such demurrer the plaintiff appeals.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Edwin F. Stern, for appellant.
Robt. W. Candler, for respondent.

O'BRIEN, J. The article is concededly libelous, describing as it does an Italian bandit, and stating facts which show that he was a murderer, a brigand, and fugitive from justice, and guilty of a felony. In connection with this article we have a reproduction of the plaintiff's photograph, and underneath it the name of the bandit, which is not the plaintiff's name. Although the name beneath the photograph is different from the plaintiff's, and there is a statement that the bandit is still in Italy, while the plaintiff lives here, we have still the fact that the likeness is that of the plaintiff, and that the photograph is referred to as that of the person of whom the article was written. Stripped of extraneous statements and considerations, therefore, the subject may be narrowed down to the question whether the person responsible for the publication of a photograph in connection with an article which is libelous, and which refers specifically to the photograph which accompanies it, can escape liability for the wrongful act by placing underneath the picture a name different from that of the person of whom the picture is a likeness, and by stating in the article some facts which, standing alone, would tend to negative the inference that the article was published of and concerning the plaintiff. We think it would be a reflection upon the law if it were powerless to afford some remedy for such grievous wrong. It is said that there is some remedy other than by an action of libel; but, whether that be so or not, we think that upon the proposition as to whether an action for libel can be maintained for the reproduction of a person's picture or likeness in connection with a libelous article this court is to a certain extent committed.

In Clary-Squire v. Press Publishing Co., 58 App. Div. 362, 68 N. Y. Supp. 1028, a woman whose stage name was "Mary Louise Clary" brought an action of libel based upon the fact that the defendant published in its newspaper, in connection with an account of the marriage of one Louise Cleary with Eugene Cowles, which event actually

happened, a picture said to be that of "Mrs. Louise Cleary Cowles," but which the plaintiff contended was her picture. The opinion of the court proceeded upon the theory that, if the latter proposition could have been sustained by plaintiff's showing that it was her picture, she could have recovered. In that case the trial judge left it to the jury to say whether the picture that was published was that of the plaintiff, and charged that, if they should find it was, and its publication with the article was harmful to her, then "the defendant has been guilty, whether unwittingly or not, of spreading broadcast a libel upon the plaintiff." Upon this question of fact the jury found against the plaintiff, and there being evidence to sustain the verdict, the judgment was here affirmed by a divided court; the majority being of the opinion that the verdict was conclusive, but the minority being of the view that the weight of evidence was in plaintiff's favor, and she had made out a cause of action for which she was entitled to damages.

In Morrison v. Smith, 83 App. Div. 206, 82 N. Y. Supp. 166, the plaintiff alleged that in defendant's magazine was printed an advertisement reading: "Illustrated New Book. Up to date. The experience of a giddy typewriter girl in New York. Type-written. Good is no name for it," etc.; and accompanying this advertisement was the picture of a young woman, which was a likeness of the plaintiff. The complaint in that case was dismissed—and this court affirmed the dismissal—solely upon the ground that the plaintiff by innuendo attributed a particular meaning to the libelous article, and that because she failed to establish that the publication was susceptible of that interpretation, even though the article was in and of itself libelous per se, she could not recover. No name was attached to the photograph, but the photograph was referred to as that of the person mentioned in the article. Upon the question of liability for the publication of the libelous article published in connection with her photograph this court said:

"Were we called upon to determine whether or not the advertisement and picture, apart from the meaning which the plaintiff in the complaint ascribed to them, were libelous per se, our inclination would be so to regard them, or at least to conclude that the interpretation to be given them is so doubtful as to present on this subject a question for the jury."

It is suggested, however, that persons who knew plaintiff's real name, and who read the article through, would be led to the conclusion that the article does not refer to the plaintiff. These considerations may go to mitigate the damages, but they in no sense destroy the libelous character of the act in producing the plaintiff's photograph in connection with an article which is libelous per se, and which refers to the photograph as that of the person to whom the article relates. It is pure assumption to assert that all who see it will read the article, or that all who may read it will be acquainted with the real name of the plaintiff. Many will look only at the picture and the head lines of the article, and thus associate the man whose photograph is given with an article describing him as a bandit and a murderer.

Thinking as we do, therefore, that the publication of one's photograph, whether accompanied by his own or another's name, or by

no name, in connection with an article referring to the photograph, and which is libelous per se, entitled a plaintiff to maintain an action for libel, and that this complaint states a good cause of action, the interlocutory judgment sustaining the demurrer to the complaint for insufficiency should be reversed, with costs, and the demurrer overruled, with costs, with leave to defendant to withdraw demurrer and to answer upon payment of costs in this court and in the court below.

VAN BRUNT, P. J., and HATCH and LAUGHLIN, JJ., concur. PATTERSON, J., dissents.