(55 Misc. Rep. 567.)

## BREEN v. NEW YORK HERALD CO.

(Supreme Court, Special Term, New York County. August, 1907.)

1. LIBEL—COMPLAINT—DEMURRER.

Where defendant in an action for libel demurs to the complaint, the question to be determined is whether the natural import of the article is libelous as it strikes the mind of the average reader.

2. SAME.

A newspaper article was entitled "Blackmail is Easy by Police System," and a portrait of plaintiff was published, with others, with the words "Men Mentioned in the Police Blackmail Scandal, and the Man Who Knows," printed beneath them. The individuals whose portraits were published were described, some as keepers of gambling houses who paid police to escape prosecution, and others as members of the police charged with corruption. The article stated that as part of the system an arrest was made and a small fine imposed on a plea of guilty, and plaintiff was stated to be the magistrate before whom the prosecution was carried on, and also instanced the procedure for the collection of blackmail where a complaint of robbery is made by a patron of a disreputable resort, and states that on the calling of the case in court a lawyer is furnished through the police sergeant who fixes the case. Held to import to the ordinary mind that the magistrate must have something to do with the settlement, so that a demurrer to the complaint should be overruled.

Action by Matthew P. Breen against the New York Herald Company. Demurrer to complaint overruled.

William McArthur, for plaintiff.

Robert W. Candler, for defendant.

BISCHOFF, J.   The argument in support of the demurrer is directed to the unreasonableness of the innuendoes. stated in the complaint, when taken with the matter published.   As I view the case, however, certain of the innuendoes are supported by the publication, so far as to justify a finding, in reason, that the meaning attributed by the complaint is the true meaning, and the demurrer must be overruled.

The article complained ·of describes a system of police blackmail.   It is headed "Blackmail is Easy by Police System," following which heading are several photographs of individuals, with their names, the central figure being the largest—a full-length picture of a policeman—and below are the words, "Men Mentioned in the Police Blackmail Scandal, and the Man who Knows."   The plaintiff, a police magistrate, is portrayed among the rest; and, to the ordinary reader of the article, reference is obviously made to him as one of the "Men Mentioned in the Police Blackmail Scandal."   The words used, in connection with the photographs and their placing, can have no other meaning.

In the article there are allusions to the individuals whose photographs are displayed with the plaintiff, and they are described, some as keepers of gambling houses whose interests lead them to pay money to the police to avoid prosecution, and others as members of the police force involved in more or less open charges of corruption.   No reference to the plaintiff is made by name, except in one minor instance toward the end of the article; but, when describing the operation of the blackmailing system, the publication states that as one of the steps in the scheme an arrest is made, a plea of guilty entered to the lesser of two complaints before the magistrate, and a small fine is imposed and paid.   Here the reader of the article finds a connection between the magistrate and the "system," so called.   The headlines and the pictorial display have prepared his mind for revelations which touch a city magistrate, and the manner in which the magistrate is finally introduced points to sinister dealing.   This very part of the article states that "it is a pretty serious matter for a person to ·be convicted of breaking the excise law."   Following this comes the announced procedure of imposing a small fine.   The impression made, as may be reasonably assumed, is that the magistrate was associated with the blackmailers; otherwise, there is no point to his careful portrayal among the "men mentioned in the police blackmail scandal."

Again, the article instances the procedure for the collection of blackmail where a complaint of robbery is made by a patron of a disreputable resort; and it is stated that, when the case is called in court, a lawyer is furnished, through the police sergeant, who succeeds in "fixing" the case.   Taken with the headlines, this imports to the average reader that the magistrate must have something to do with the unlawful settlement; and, without pursuing the subject in all its phases. as suggested by the innuendoes pleaded, it is apparent that the complaint reasonably tenders an issue of fact as to whether the article does not, by its headlines and pictures, in connection with all the published matter, charge the plaintiff with participation in a criminal conspiracy.

Upon this demurrer the question is, not whether the publication can be found, by a keen and discriminating intelligence, to charge nothing when closely read, but whether its natural import is libelous as it

strikes the mind of the average reader of a newspaper. Turton v. New York Rec. Co., 144 N. Y. 144, 38 N. E. 1009; De Sando v. New York Herald Co., 88 App. Div. 492, 85 N. Y. Supp. 111. So tested, the complaint states a cause of action.

Demurrer overruled, with costs, with leave to defendant to plead over, upon payment of costs, within 20 days.