the testator understood the nature of the act he was performing, and that the will was the free and intelligent expression of his wish and intention.

We think, therefore, that the decree of the Surrogate's Court should be affirmed, with costs. All concur.

---

KNICKERBOCKER v. PRESS PUB. CO.

(Supreme Court, Appellate Division, Second Department. February 24, 1911.)

1. LIBEL AND SLANDER (§ 86*)—PLEADING—COMPLAINT—INNUENDO.

Where the main allegations of the complaint in a libel action show that plaintiff was not the person of whom the libelous matter was published, plaintiff does not state a cause of action simply by using an innuendo that he was the person so referred to.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 205–207; Dec. Dig. § 86.*]

2. LIBEL AND SLANDER (§ 15*)—PUBLICATION OF PHOTOGRAPHS.

Though one of certain photographs, connected with a publication by appropriate references and described as being those of infant children adopted from an asylum at a time when plaintiff was 18 years old, was a likeness of her some 16 years previous, there was no libel, where no one, viewing the photograph and reading the article, could infer that plaintiff had just been so adopted.

[Ed. Note.—For other cases, see Libel and Slander, Dec. Dig. § 15.*]

Appeal from Special Term, Westchester County.

Action by Ava Belle Knickerbocker, an infant, by William W. Knickerbocker, her guardian ad litem, against the Press Publishing Company. From an order directing judgment for defendant on the pleadings, and from the judgment entered thereon, plaintiff appeals. Affirmed.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and WOODWARD, JJ.

William H. Freedman, for appellant.

Howard Taylor (John G. Jackson, on the brief), for respondent.

CARR, J. This is an appeal from an order directing judgment for the defendant on the pleadings and from the judgment entered thereon. The action was brought by a young lady of the age of 18 years, through a guardian ad litem, to recover damages for an alleged libel published by the defendant in the city of New York in its newspaper, the World, on the 4th day of April, 1909. The alleged libel consisted of the publication of a number of photographs of babies under a printed heading as follows:

"World's Story Promptly Finds Good Homes with Loving Foster Parents for These Little Children."

Immediately beneath this heading were grouped seven photographic reproductions of a number of babies and very small children. Beneath this grouping were the words:

"Homeless Children Sent to Childless Homes."

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The illustrations were accompanied by news matter purporting to describe the work of the New York Infant Asylum, the origin of its inmatês, and the supposed fact that the publication in the World on March 7, 1909, of a .story relative to the adoption of a small boy called "Bobbie Ely," or "Robert Scheffer Ely," had led to large demands upon the New York Infant Asylum since March 7, 1909, for the adoption of foundlings or destitute children into good families and good homes. The plain purport of the illustrations and news matter in the publication of April 4, 1909, was that the photographs there printed were those of babies so adopted since March 7, 1909, as a result of the publication, on that date, of the story as to the adoption of "Bobbie Ely."

The plaintiff seeks to charge the defendant with libelous charges against herself in the following manner: The news article of April 4th describes the origin of the inmates of the foundling asylum as follows:

"Children who become wards of the asylum have various origin. Every year from 250 to 300 infants are taken to Bellevue by the police. They come from areaways, from doorsteps, from under the rose bushes in the park. There are places were babies may be checked and mothers fail to call for them. Sometimes they are abandoned in baby carriages on the sidewalk in the shopping districts. Half of these waifs are baptized Catholics and delivered to Catholic societies, and the others are baptized Protestants and go to the New York Infant Asylum at Amsterdam avenue and Sixty-First street. The poor furnish another source of supply. One or both parents may be ill, the man may be out of work and poverty pinches, or a woman, alone with children, may get work to help support them if she may be relieved of their care."

This language the plaintiff attempts to connect with herself by alleging that one of the photographs accompanying the news matter was that of herself when she was a child of the age of 2½ years. Therefore she claims that, although when the publication was made she was a young lady of 18 years, she was in fact described as having been adopted as a baby from the New York Infant Asylum between March 7 and April 4, 1909. By innuendo she seeks to connect with herself every statement of the news article of April 4, 1909, sometimes in a manner not lacking in humorous aspect, as, for instance, as follows:

"Half of these waifs" (meaning the plaintiff) "are baptized Catholics and delivered to Catholic societies, and the others" (meaning the plaintiff) "are baptized Protestants and go to the New York Infant Asylum," etc.

The defendant moved for judgment on the complaint, on the ground that it appeared from the allegations thereof that the alleged libelous matter did not and could not refer to the plaintiff, and hence no cause of action was stated therein in her favor. The learned trial court sustained this contention and granted the motion.

It is well-settled law, in this state, that where, in a complaint in an action for libel, the main allegations thereof show that the plaintiff was not the person of whom the libelous matter was published, the plaintiff does not state a cause of action simply by using an in-

nuendo that he was the person so referred to. Fleischmann v. Bennett, 87 N. Y. 231; Corr v. Sun Printing & Publishing Association, 177 N. Y. 131, 69 N. E. 288; Fagan v. New York Evening Journal Publishing Co., 129 App. Div. 28, 113 N. Y. Supp. 62. As the complaint here alleges that at the time of the publication she was a young lady of 18 years of age residing with her parents, it seems quite plain that language describing the origin of young babies and small children then in or then adopted from a foundling asylum in the specified period between March 7 and April 4, 1909, did not and could not refer to her.

It is claimed, however, that the use of the photograph distinguishes the case at bar from those shown in the authorities above cited. To establish this distinction, the appellant relies largely upon the decision in De Sando v. New York Herald Co., 88 App. Div. 492, 85 N. Y. Supp. 111. In that case a newspaper published a news article with a heading as follows:

"Musolino, the Famous Italian Brigand, Coming to America, but Not, He Says, until His Revenge is Complete."

Then followed other similar headlines of the same character. As a part of this article was published a photograph of a man described as Musolino by the printing of his name immediately under it. This photograph was that of the plaintiff, De Sando, an Italian who resided in New York. The news article in question referred to "his portrait, which we print with this article," as being a recent photograph, and the only one known to be in existence in this country. The article likewise stated that "Musolino is still in Italy." It was held in that case that the printing of De Sando's photograph with the name of Musolino underneath it as the name of the original of the photograph, together with accompanying news matter which directly described the photograph as that of Musolino, was a libel on De Sando, by attributing to him, through the use of his photograph, the qualities of Musolino, the Italian brigand.

The facts of that case are sharply distinct from those here involved, and the facts there presented control the scope of the court's opinion. There the photograph was distinctly labeled as that of Musolino, and the article in which it appeared described, in large headlines, Musolino as an Italian brigand who was coming to America. Any one reading these headlines and looking at the photograph labeled as that of Musolino would be entitled to consider it as of the brigand Musolino, and thus work to the disadvantage and harm of De Sando. In the case at bar there are no libelous headlines or labels accompanying the photographs. If one seeks for libelous matter, he must find it, if at all, in the news article. It is true that the photographs are connected with the news matter by appropriate references; but these photographs are described as being of infant children adopted from the New York Infant Asylum between March 7 and April 4, 1909. No one, by looking at the photograph and reading the news matter, could in any way infer that the plaintiff, then a young woman of 18 years of age, had just been adopted as an infant from the asylum. Assuming the photograph of one of these small

children to be a likeness of the plaintiff when she was less than 3 years of age, it was not a likeness of her when she was 18 years of age, when the alleged libelous matter was published of and concerning some person who was a little baby at the time of the publication

We can well understand that the plaintiff and her family may have been pained by the publication of a photograph which was a likeness of the plaintiff some 16 years previous in the interesting and attractive days of her babyhood; but we fail to see in such publication any libel on the plaintiff.

The order and judgment should be affirmed, with costs. All concur.