JOSE C. DE FIGUEROLA, Plaintiff, *v.* McGRAW-HILL PUBLISHING COMPANY, INC., Defendant.

Supreme Court, Special Term, New York County, July 30, 1947.

*Herbert E. Kaufman* for defendant.

*Gordon, Brady & Keller* for plaintiff.

HECHT, J. Motion to dismiss amended complaint as insufficient in law upon the face thereof, pursuant to subdivision 5 of rule 106 of the Rules of Civil Practice.

The action is for libel. The statement complained of is an article published by defendant in its magazine "Business Week". Such article described Argentina's five-year plan as presented to its Congress by President Peron, and said: "Director of the Plan is a Spanish-born Argentine citizen, Jose Figuerola (below)." Below was a photograph and under it the name Jose Figuerola. Such photograph was in fact one of plaintiff, whose name is also Jose Figuerola, who was also born in Spain and who is a consulting engineer, but who has lived in the United States since 1903 and is an American citizen.

The article in "Business Week" contains nothing derogatory about the Jose Figuerola referred to therein, nor about President Peron or his five-year plan. The complaint alleges, however: "Sixth: That the defendant in and by said publication aforesaid meant and intended to charge and did charge that the plaintiff was in fact Jose Figuerola, an Argentine citizen and an official in the present Argentine government of which Juan Domingo Peron is President, and that plaintiff was in fact the Jose Figuerola who had been found by the government of the United States of America to be a wartime axis agent."

"NINTH: That by reason of the publication of said article as aforesaid, the plaintiff has been injured in his good name, fame, credit and reputation as a man and a loyal citizen of the United States of America, and has lost the esteem and respect of his associates, clients, friends and acquaintances and the plaintiff has been held up to public scorn, ridicule, contempt and hatred to his great damage; and demand for the plaintiff's services has been substantially curtailed; and as a result plaintiff has suffered great pain and mental anguish."

The complaint does not directly allege that the Argentine Jose Figuerola had been found by our Government to be a

wartime Axis agent, but since that is apparently what the pleader means to say, the motion to dismiss will be granted, with leave to amend by specifically adding such an allegation. As thus amended, the complaint will properly allege a false publication which is libelous per se. (*Balabanoff* **v.** *Hearst Consolidated Publications*, 294 N. Y. 351.)

The article in that case charged that plaintiff was " secretary to the dread ' Cheka ' ". Except for the word " dread ", the article itself contained nothing derogatory about the Cheka. The complaint went on to allege numerous facts indicating that the Cheka had engaged in continuous terroristic acts in Russia, and "that its officers and leaders were looked at askance, with distrust, apprehension, contumely, scorn, fear, resentment and vengeance " (p. 354). The court held that the presence of these allegations rendered the complaint legally sufficient, saying, per DYE, J. (pp. 354–356):

" Concededly, the plaintiff has alleged no special damage. This, however, is not fatal as it is well established that a complaint in a libel action is sufficient if the false publication complained of is libelous per se. (*Sydney* v. *Macfadden Newspaper Pub. Corp.*, 242 N. Y. 208; *O'Connell* v. *Press Publishing Co.*, 214 N. Y. 352.) * * * The article in question goes much further than merely charging appellant with having been an officer or agent of a foreign government. She is charged with association with Mussolini in a hangout for Russian revolutionaries, headed by her, as well as later becoming secretary to the dread ' Cheka '. In Restatement of the Law of Torts, section 563, subdivision d, it is stated: ' In determining the meaning of a communication, words, whether written or spoken, are to be construed together with their context. Words which standing alone may reasonably be understood as defamatory may be so explained or qualified by their context as to make such an interpretation unreasonable. So too, words which alone are innocent may in their context clearly be capable of a defamatory meaning and may be so understood. *The context of a defamatory imputation includes all parts of the communication which are ordinarily heard or read with it.'*

" *The allegations of the complaint describing the organization, functions and practices of the ' Cheka ' are essential to an understanding of the significance of the language of the subject publication and do not, in our opinion, constitute extrinsic facts of such a character as to necessitate allegations of special damage.*

"Given a fair reading, we feel that the article in question, taken in its entirety, fairly raises a question as to whether the plaintiff was held up to public contempt and disgrace; and, if so found, such an article is libelous per se without alleging special damages. (*Hays* v. *American Defense Society*, 252 N. Y. 266; *Kimmerle* v. *New York Evening Journal, Inc.*, 262 N. Y. 99.)

"In *Katapodis* v. *Brooklyn Spectator, Inc.* (287 N. Y. 17, 20), in which a newspaper article describing the poverty of the plaintiff was held libelous per se, LOUGHRAN, J. said: ' The reason is that in libel the matter is defamatory not only if it brings a party into hatred, ridicule or contempt by asserting some moral discredit upon his part, but also if it tends to make him be shunned or avoided, although it imputes no moral turpitude to him.'

"Whether the false publication in the instant case, in and of itself, is sufficient to bring the plaintiff into disrepute and subject her to the hatred and contempt of her friends and associates is a matter within the province of the jury, and we are unwilling to say, as a matter of law, that the language used is not libelous per se." (Italics supplied.)

In the instant case, the article falsely identifies plaintiff as an Argentine official by printing plaintiff's photograph as that of the Argentine Jose Figuerola. In *Morrison* v. *Smith* (177 N. Y. 366) and in *De Sando* v. *New York Herald Co.* (88 App. Div. 492 [1st Dept.]) it was held libelous to use plaintiff's picture in connection with an article concerning another person where there was not even the similarity of names which exists in the case at bar. It is true that the articles in those cases contained derogatory statements about the subject of the article, and this element does not exist here. However, I am of the opinion that under the *Balabanoff* case (294 N. Y. 351, *supra*) the allegations herein that the Argentine Jose Figuerola "had been found by the government of the United States of America to be a wartime Axis agent", like the allegations in that case concerning the activities and reputation of the Cheka, "are essential to an understanding of the significance of the language of the subject publication and do not * * * constitute extrinsic facts of such a character as to necessitate allegations of special damage". The article draws with it all the Argentine Jose Figuerola is, and any facts publicly known about him which would tend to make plaintiff shunned or avoided by those who mistakenly believed him to be the Argentine Figuerola as a result of reading the article complained of. (Cf. *Sydney* v. *Macfadden*

*Newspaper Pub. Corp.,* 242 N. Y. 208, 213, *supra; Henry* v. *New York Post, Inc.,* 280 N. Y. 842.)

This rule of reason does not impose too onerous a liability upon newspapers and magazines  They are given a wide range of privilege of fair comment in expressing opinions.  When they undertake to state facts, they should take care to be accurate.  The complaint alleges that the article was published by defendant concerning plaintiff '' without proper investigation and carelessly, wantonly and recklessly in disregard of the rights of the plaintiff ''.  If this and the other allegations of the complaint be established at the trial, defendant should make good the damage suffered by plaintiff as the result of its reckless and wanton publication of plaintiff's photograph as that of a person of the same name who was found by our government to be a wartime Axis agent.

The motion under rule 106 is granted, with leave to plaintiff to serve an amended complaint within twenty days after service of the order herein with notice of entry.

Defendant has also moved for an order, pursuant to rule 103, striking out paragraph Sixth of the complaint, and so much of paragraph Seventh as alleges that plaintiff is '' married and the father of three children, one of whom is an officer in the armed forces of the United States of America ''.

The motion is denied insofar as it is directed to paragraph Seventh.  '' The plaintiff may allege his good repute, history, former positions, his family status, business employment, office.'' (Seelman, Law of Libel and Slander, par. 395, p. 394, and cases cited at n. 34 thereunder.)

As to paragraph Sixth, the motion is denied in respect of the allegation that Jose Figuerola '' had been found by the government of the United States of America to be a wartime Axis agent '', for the reasons already indicated.  It will be granted in respect of the allegation that Jose Figuerola is '' an Argentine citizen and an official in the present Argentine government of which Juan Domingo Peron is President '', since that states nothing that is libelous even under the rule of the *Balabanoff* case (294 N. Y. 351, *supra*).  Settle order.