# Mayor and Aldermen of Birmingham v. Lewis.

*Action against Municipal Corporation for Damages on account of Personal Injuries caused by Defects in Street.*

1. *Liability of municipal corporation for personal injuries caused by defects in street.*—An action for damages lies against a municipal corporation, in favor of a person who, walking along one of the side-walks by night, received personal injuries by stepping into the uncovered portion of a ditch which crossed it, there being no light or other warning signal posted; and the fact that the corporation, though it had levied the full rate of taxation allowed by law, had not the necessary funds in hand to keep the street and side-walk in proper repair, is no defense to the action, when it is not shown that the corporation had exhausted other means placed in its power by its charter.

[Mayor & Aldermen of Birmingham v. Lewis.]

2. *Damages.*—The case being tried in the court below without a jury, and judgment rendered for the plaintiff for $1,000 as damages, this court can not say that the damages are excessive, when the evidence showed that one of plaintiff's legs was broken by the fall which she received, that her injuries confined her to her bed for nine weeks, that she could not walk without limping at the time of the trial, one year afterwards, and that her injuries might be permanent.

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. JAMES B. HEAD.

This suit was brought by the appellee, Maggie Lewis, against the Mayor and Aldermen of Birmingham; and sought to recover damages for personal injuries, which she claims to have sustained by reason of the negligence of the defendant in respect to the repair of a certain street. The defendant pleaded the general issue, and contributory negligence. No jury having been demanded by either party, the case was tried, as is allowed by the statute, by the circuit judge, without the intervention of a jury; and upon hearing the pleadings and the facts, the judge rendered judgment for the plaintiff in the sum of $1,000. The facts are sufficiently set out in the opinion. The defendant appeals, and the assignments of error are based upon the rendition of the judgment, and upon certain rulings upon the evidence, which are also shown in the opinion.

CABANISS & WEAKLEY, for appellant.—1. A municipal corporation is only required to keep such streets or parts of streets in repair as are necessary for the convenience and use of the traveling public.—*Baset v. St. Joseph,* 53 Mo. 290; *Brown v. Glascon,* 57 Mo. 156; *Craig v. Sedalia,* 63 Mo. 417. 2. A municipal corporation is not liable for a defect in the plan of a public work, as distinguished from its mode of execution.—*Detroit v. Beekman,* 22 Am. Rep. (Mich.) 50. 3. Evidence that other persons had been injured at the same place can not be looked to as showing negligence of defendant. *Hubbard v. Concord,* 69 Am. Dec. 520. 4. The amount of damages awarded is excessive.—1 Sutherland on Damages, p. 17. 5. A municipal corporation is not liable for a failure to repair a street, if the municipality has not the necessary funds to perform the duty.—*Albritton v. Huntsville,* 60 Ala. 486; *McDaniel v. State,* 31 Ala. 390; *Hines v. City of Lockport,* 50 N. Y. 238; *Robinson v. Chamberlain,* 34 N. Y. 389; *Hoover v. Barkhoff,* 44 N. Y. 113; *Rooney v. Randolph,* 128 Mass. 580; *Monk v. New Utrecht,* 104 N. Y. 552; *Lamont v. Haight,* 44 How. Pr. 1; *Wendell v. Troy,* 39 Barb. 338.

[Mayor & Aldermen of Birmingham v. Lewis.]

R. L. THORNTON, *contra.*—1. It is the unquestioned duty of municipal corporations to keep their streets and side-walks—the whole width of their thoroughfares—in safe condition and good repair, and if any one is injured through a breach of this duty, an action for damages can be maintained.—*City Council of Montgomery v. Wright,* 72 Ala. 411; *Smoot v. Wetumpka,* 24 Ala. 112; *Albritton v. Huntsville,* 60 Ala. 486; *Chicago v. Robbins,* 2 Black 418; *Bacon v. Boston,* 3 Cush. 174; 2 Dillon Mun. Corp. (3d ed.), §§ 1017, 1005, and note; Sherman & Redfield on Negligence, § 385. 2. The hole in which plaintiff fell being part of, or very near, the side-walk, defendant was negligent in failing to put and maintain proper guards, rails or barriers around the dangerous hole.—*Murphey v. Gloucester,* 105 Mass. 470; *Norwich v. Breed,* 30 Conn. 535; *Ghenn v. Provincetown,* 30 Conn. 313; *Bassett v. St. Joseph,* 53 Mo. 290; 34 Iowa 41. 3. The want of funds to repair streets is no answer to the wrong complained of in this action.—*City of Alton v. Hope,* 68 Ill. 167; *Burnes v. Town of Elba,* 32 .Wis. 605.

WALKER, J.—In the year 1885 the authorities of the city of Birmingham constructed a storm water sewer extending from the eastern portion of the city at Twenty-seventh street down Second alley, which bisects the city blocks between Second and Third avenues, to the east side of Eighteenth street, where the sewer turns in a southwesterly direction and crosses that street diagonally. The sewer was about three feet across and from four to six feet deep, as variously stated by different witnesses. It was covered over to the surface level except that an opening into it was left on the east side of Eighteenth street just west of a wooden bridge which spanned said sewer at its intersection with the side-walk. Said hole or opening was about three feet by four feet across and extended to the bottom of the sewer. The upper edges of the walls of the opening were on a level with the surface of the street, and there were no railings or other guards around it. In fact the pit was so situated that travellers on the street might readily fall into it and there was nothing at all to warn them of the danger. Some of the witnesses stated that the bridge covered the entire width of the side-walk, so that the part of the opening next to the side-walk was in the gutter or drain of the street; while others stated that the bridge was narrower than the side-walk and that the opening into the sewer encroached upon the side-walk, so that it was immediately in the path of pedestrians. Appellee lived in a house on the northeast corner of said Second alley and Eighteenth

VOL. 92.

street. She had been living there several weeks prior to the accident which was the occasion of this suit. On the opposite side of the street but south of said Second alley was the store of one Burney. On the night of February 21st, 1889, appellee went across the street to make a purchase at said Burney's store, and in returning to the house where she lived, she fell into said opening and had one of her legs broken between the ankle and the knee. There was no light at said bridge or near it. There was no contradiction of appellee's statement that during the time she had lived at said house she had not been on the street except at night and that she did not know where the opening into the sewer was. As a result of said injury appellee was confined to her bed nine weeks. There was evidence that she had suffered great pain; that at the time of the trial, nearly a year after the injury was received, she could not walk without limping, and that the injury might be permanent. The place of said accident was on one of the principal streets of Birmingham and was very near the business center of the city. The city authorities had all along known of said opening or hole and had been notified of the fact that one or two other persons had fallen into it.

A municipal corporation disregards one of its plainest duties when it permits an unguarded pit such as that above described to remain in a city thoroughfare, where of necessity it is a constant peril to travellers. In the present case the negligence of the authorities in this regard was obvious and glaring. *City Council of Montgomery v. Wright*, 72 Ala. 411; *Albritten v. Mayor and Aldermen of Huntsville*, 60 Ala. 486; *Bradford v. Mayor and City Council of Anniston*, decided at present term, *supra*, p. 349; Elliott on Roads and Streets, 452. The excuse offered for the negligence is disclosed by the exceptions reserved to the refusal of the court to admit evidence to show that the city did not have the funds to improve Eighteenth street, that it had levied the full rate of taxation allowed by law, and had other expensive corporate duties to perform, and that it did not have the money or means to grade or repair Eighteenth street or put it in a condition that would admit of the closing of said opening. It appeared without contradiction that said street had for a number of years been opened, worked and put in condition for public travel and cinders put on the sidewalks; though in the locality where the accident occurred the street was not graded or improved as were other streets in the city. The case was tried by the court without a jury and if the proposed proof had been admitted it would not properly have changed the result. We have not discovered any case in

[Mayor & Aldermen of Birmingham v. Lewis.]

which a municipal corporation has been held relieved of responsibility for damages resulting from a defect in the street of a city because of the insufficiency of the means at the disposal of the authorities for purposes of street improvements or repairs. In several cases, in which it was held that the evidence did not show such insufficiency, it was suggested that damages for an injury similar to the one shown in this case are not recoverable of a municipal corporation which has no means at all of raising a corporate fund to improve or repair its streets. The ground of such non-liability is that that can not be a legal duty which the law does not permit to be executed.—*Erie v. Schwingle*, 22 Pa. St. 384; s. c. 60 Am. Dec. 87; *Hines v. Lockpott*, 50 N. Y. 236. In this case it was not proposed to be shown that the city authorities had exercised the power conferred by section 24 of the amended city charter (Acts 1882-3, p. 318) to require each male inhabitant of the city between the ages of eighteen and fifty years to work upon the streets five days in each year, or in lieu of such work to pay into the city treasury a sum not exceeding five dollars to be applied exclusively to the improvement of the streets, and that the means so raised had been properly applied; nor was it proposed to be shown that the city authorities had exercised, for the improvement or repair of Eighteenth street, the ample powers conferred by the act which was sustained by the decision of this court in the case of *Mayor and Aldermen of Birmingham v. Klein*, 89 Ala. 461. The powers conferred by those acts constitute resources for street improvements and repairs. The offer of proof not having gone to the extent of showing that the city authorities had exhausted the means at their command for the performance of the duty imposed, the evidence was immaterial and for that reason was properly excluded.— *Weed v. Ballston Spa*, 76 N. Y. 329; *Shelby v. Claggett*, 22 N. E. Rep. 407. Furthermore, inability to improve or repair Eighteenth Street would not relieve appellant in this case. The hole into the sewer should never have been allowed to remain in the street unless the peril of its existence there could be obviated by the erection of guards around it, or by the placing of signals to give due warning of the danger. No excuse at all is suggested for the failure to provide any such safeguards. The city engineer stated on the trial that said opening was necessary in order to drain Eighteenth Street, and that it was arranged in the only practicable way possible as the street was not graded or filled on that side. He did not,. however, pretend to say that the safety of the public could not have been provided for by barriers around the excavation or in some other way, or that the pit did not render the street un--

[Mayor & Aldermen of Birmingham v. Lewis.]

safe for public use. A city has no more right to plan or create an unsafe and dangerous condition of one of its public streets than it has to plan or create a public nuisance.—*Gould v. Topeka*, 32 Kansas, 485; 4 Dillon on Mun. Corp., § 1016, n. 3. The dangers incident to the unguarded condition of the opening into the sewer could have been provided against though the city did not have the means to improve or to repair the street.

In the amount of damages awarded to appellee by the judgment of the Circuit Court we discover nothing of which appellant has just reason to complain. It may be that in a case like this one vindictive damages are not recoverable against a municipal corporation. If, however, in consequence of the negligence of the city authorities personal injuries are suffered involving physical pain or loss of health, due compensation therefor is not to be denied because of the public character of the corporation. In a note to section 1020 of Dillon on Municipal Corporations, where the question of exemplary damages in such cases is considered, this expression from an English case is quoted with approval: "Undoubtedly health is the greatest of all physical blessings; and to say that when it is utterly shattered no compensation is to be made for it, is really perfectly extravagant." The impossibility in such cases of definitely measuring the damages by a money standard is no reason for denying to the injured person the only relief the courts can afford. The authorities recognize bodily pain and disfigurement as items for which compensation is to be made in the assessment of damages for personal injuries.—*Barbour County v. Horn*, 48 Ala. 566–577; *Mason v. Ellsworth*, 32 Me. 271; 5 Am. & Eng. Encyc. of Law, 42; 2 Sedg. on the Measure of Damages, (7th, Ed.) 543, n. (a). In view of the character of the injury shown to have been suffered by appellee the damages assessed by the Circuit Court can not be regarded as excessive.

Affirmed.