**WOOD v. HACKER. (6 Div. 251.)**

Court of Appeals of Alabama. Dec. 11, 1928.

Rehearing Denied Jan. 8, 1929.

David J. Davis, of Birmingham, for appellee.

BRICKEN, P. J. Appellee brought her suit against appellant to recover of him the sum of $10,000, for unlawfully causing her to be arrested and imprisoned; that is, for false imprisonment. There were five counts to the complaint, all of which were eliminated, except count 5, which is in Code form, except that said count fails to aver on what charge the plaintiff was arrested and imprisoned, which is immaterial in so far as this case is concerned.

Demurrers were filed to the complaint as last amended. The trial court did not err in overruling said demurrers. Wood-Fruitticher Grocery Company was dismissed from the complaint as a party defendant, which disposes of the demurrer on the first and second grounds thereof. The demurrers were also properly overruled on grounds 3, 4, 5, 6, 7, 8. "A person may be the responsible

Matt H. Murphy, of Birmingham, for appellant.

instigator of an arrest without expressly commanding, requesting, or directing it." Standard Oil Co. v. Davis, 208 Ala. 565, 94 So. 754; Standard Oil Co. v. Humphries, 209 Ala. 493, 96 So. 629.

Issue was joined between the plaintiff and defendant on count 5 of the complaint, and the defendant's plea of the general issue.

According to all the evidence shown by the record in this case, the appellee was unlawfully arrested and imprisoned by one W. B. Helton, a city detective for the city of Birmingham. We may add that the arrest, according to the detective's own statement of all the causes and incidents, was a most outrageous performance. The question is, Did the appellant cause the arrest and imprisonment of the plaintiff under any well-defined tendencies of the evidence?

According to the appellee's testimony, the arrest was made without legal justification or excuse, and was therefore unlawful.

The evidence for the appellant consisted of the testimony of the detective, Helton, and of the testimony of the appellant himself.

Helton testified, among other things, that he had been to see D. W. Wood, the appellant, in regard to some discrepancies between the Birmingham Hotel & Bakeries Supply Company, on Avenue B in Birmingham, and other business concerns in said city, with reference to certain accounts or transactions that accrued or occurred just prior to the time this business was closed.

The appellee was office manager, and kept the books, of said Birmingham Hotel & Bakeries Supply Company.

The detective had been assigned, by the chief of police, to the duty of clearing up said discrepancies. These matters had been discussed between the appellant and the detective before the detective went to see the appellant. The detective had been advised by appellant that appellee's books kept by her for said Birmingham Hotel & Bakeries Supply Company had been audited, and the same were correct; that there were no charges whatever against her. The appellant gave the detective the telephone and house numbers, respectively, of appellee. The detective further testified that he did not get in touch with the appellee by 'phone, or otherwise, and that about two or three days after that he was notified by telephone, by some party, that the appellee had just gone into appellant's place of business, and this person told the detective "How she was dressed." The detective immediately went to appellant's place of business, parked his car, and arrested appellee as soon as she came out of appellant's place of business. Was this arrest unlawful, and was it in anyway instigated by appellant?

The appellee, among other things, testified that she asked the detective to let her call up the appellant to prove by him who appellee was, and that the detective said, "Wood knows all about it," and that afterwards the detective said to her, "You don't blame Wood for making an investigation?" The detective further testified: "Mr. Wood had told me that he had no charges against her, and Mr. Wood didn't have anything at all to do with this. I went to see Mr. Wood on my own accord. Mr. Wood did not, at any time, direct, request or command me to arrest the plaintiff."

On cross-examination the detective testified: "I didn't ask Mr. Wood to call me because I didn't know whether he would or not."

As to the last-quoted paragraph of the detective's testimony, attention is here directed to the following statement made by Wood himself: "He (the detective) said he had tried to locate Mrs. Cothran (now Mrs. E. G. Hacker), the appellee, and had been unable to, and he asked me if I would notify him when she came back, and I told him I would. So when she came in, I called him, or it was supposed to have been him. That was the day the arrest was made. I told him how she was dressed."

Again the witness Wood, testifying on cross-examination, said: "I called Helton soon after she came in the store; I would say five or ten minutes after she came in. I described her clothing so he would know her."

Again Wood testified on cross-examination: "I didn't tell her that I was going to call the officers, neither did I tell anybody else. I kept that to myself."

The witness Wood further testified on cross-examination as follows: "My recollection is that I made an engagement with her for that day, and I expected her to come; I had one engagement with her to talk over a business matter and as quick as she came, I called the officer. I did that without talking to another soul about it. I told the officer that she was there and described her clothing. I had an engagement with her there to talk over business with her, and when she came into the store, before I talked with her and without talking to another soul about it, I called up the officer and told him that she was there and described her clothing. I had an engagement with her there to talk over business with her and when she came in the store, before I talked with her, and without talking to another soul about it, I called up the officer and told him that she was there and described her clothes."

The detective testified: "Mr. Wood had told me that he had no charges against her, and Mr. Wood didn't have anything at all to

do with this. I went to see.Mr. Wood on my own accord. Mr. Wood did not, at any time, direct, request or command me to arrest the plaintiff."

Mr. Wood testified: "I saw Mrs. Hacker two or three times after the business was discontinued. Our relations had been pleasant and cordial throughout the entire term of her employment."

On the last-quoted testimony of the detective and of Wood, the appellant, but for other testimony hereinabove quoted, appellant would probably have been entitled to the general affirmative charge on the issue of responsible causation on the part of the appellant for the arrest.

■ We will now consider the errors assigned by appellant. The first assignment is based upon the action of the court in giving the following charge at request of plaintiff:

"I charge you gentlemen of the jury that if you are reasonably satisfied from the evidence in this cause that Officer Helton unlawfully arrested and imprisoned the plaintiff on or about the 23d day of February, 1925, and that as a proximate consequence of said unlawful arrest and imprisonment plaintiff was humiliated, caused mental pain and anguish and to expend money for medical treatment and that the defendant, D. .W. Wood aided and abetted the said officer, Helton, in making said arrest, then you must find for the plaintiff in this cause."

The trial court did not err in giving the above charge. One who aids and abets another in making an unlawful arrest and imprisonment, stands, in the eye of the law, in the shoes of the person who unlawfully arrests and imprisons another. It is sufficient if the aid furnished facilitates an unlawful arrest and imprisonment that would have transpired without it. Atty. Gen. v. Tally, 102 Ala. 25, 69, 15 So. 722.

It is without question that the telephone message from the appellant to the detective to the effect that the appellee was at the appellant's place of business and the description of her dress facilitated the arrest and imprisonment of the appellee.

■ The second assignment of error is based upon the refusal to appellant of charge No. 3, to wit: "If you believe from the evidence that Officer Helton made the arrest on his own responsibility your verdict must be for the defendant."

There was no error in the refusal of this charge. It is true that, where an officer makes an arrest *solely* on his own responsibility, then the defendant would not be responsible even though he had directed or requested such action. Standard Oil Co. v. Davis, 208 Ala. 565, 94 So. 754. The charge refused does not correctly state the above principle of law. Even if said charge cor-

rectly stated a principle of law applicable to the evidence in this case, the trial court will not be put to error for refusing said charge because the principle asserted in said charge is fully covered by the court's oral charge in the following language:

"If you find under the evidence in the case that the defendant, Wood, was the procuring cause of her being arrested, procured her arrest under all the evidence, and you find it was an unlawful arrest, then the plaintiff would be entitled to recover. On the other hand, if you find under the evidence of the case that the defendant, Wood, did not cause her to be arrested, and that she was arrested on the initiative of the officer without any assistance or help on the part of Wood, and that he had nothing to do with it then the plaintiff would not be entitled to recover."

The refused charge being covered by the court in its oral charge, there was no error in refusing to give the charge. Burk et al. v. Knott, 20 Ala. App. 316, 101 So. 811.

■ The third assignment of error is based upon the refusal of the court to give appellant's written charge No. 2, which said charge is in the following language:

"If you believe from the evidence that the defendant did not direct, command or request the arrest of the plaintiff your verdict must be for the defendant."

The above charge is misleading. In Standard Oil Co. v. Davis, supra, the Supreme Court said: "Very clearly, we think, a person may be the responsible instigator of an arrest without expressly commanding, requesting, or directing it."

■ The fourth assignment of error is based upon the refusal to appellant of charge 4, which is as follows: "I charge you that when a citizen is called upon to assist an officer in making an arrest the law makes it his duty to act at once." This charge in effect asserts a correct proposition of law, but is in no manner applicable to the evidence in this case. There is no evidence, whatever, to the effect that the detective requested any one to assist in making the arrest. So far as the evidence discloses, the detective, W. B. Helton, arrested plaintiff without calling for assistance from any one, got her into his own car, detained her against her will, and carried her against her will to police headquarters. The charge is therefore abstract, and was properly refused.

■ The fifth assignment of error is based upon the refusal of the trial court to give the general affirmative charge for defendant.

The general affirmative charge in favor of the defendant should not be given, where there is the slightest evidence showing right of recovery. American Ry. Express Co. v. Henderson, 214 Ala. 268, 107 So. 746; Mc-Gahey v. Albritton, 214 Ala. 279, 107 So. 751;

Chevrolet Motor Co. v. Commercial Credit Co., 214 Ala. 433, 108 So. 248.

The question then, is, Is there any evidence in this case that tends to support the plaintiff's complaint? A jury has said there was such evidence by their verdict in this case. The trial court, who had the opportunity of hearing the witnesses testify and of observing their appearances and demeanor while testifying, has, by its judgment in denying the motion for a new trial, said that there was evidence tending to support the plaintiff's complaint.

The plaintiff was a woman who had been in the employ of the defendant. According to his own statement, she gave him perfect satisfaction, and faithfully and honestly discharged the duties of her office. Their relationship was terminated by the defendant going out of the business in which the plaintiff had been employed. His statement was: "Our relations had been pleasant and cordial throughout the entire term of her employment." After the business relationship between the plaintiff and the defendant had terminated, the evidence discloses that the defendant was liable to become involved with certain business houses in Birmingham. (Really because of the infidelity and dishonesty of a negro employee.) Complaint being made by one or more of these business houses about their dealings with the defendant to the police department, the entire matter was placed in the hands of W. B. Helton, a city detective for the city of Birmingham. The detective had interviews with the defendant, and some of the detective's statements reflected upon the honesty and integrity of the plaintiff. The defendant, at the request of the detective, and without one word of explanation to the plaintiff, gave the detective the plaintiff's house number or home address, together with plaintiff's telephone number.

Quite clearly, it appears to us that, under the above facts and circumstances, the defendant owed the plaintiff the courtesy, if not the duty imposed by loyalty to a faithful and honest employee, of advising her of the situation, and thus give her the privilege of an interview with the detective in the office of her employer.

We do not know what actually transpired between the detective and the defendant in regard to the telephone call to the detective from the defendant advising him of the presence, at the defendant's office, of the plaintiff and informing him in regard to her clothing. As to this the detective testified:

"I didn't ask Mr. Wood to call me because I didn't know whether he would or not." As to the same matter, Mr. Wood, the defendant, testified: "I told Helton that I would call him. He asked me to call him when she came in and I told him I would."

Thereafter the defendant busied himself in making an engagement with the plaintiff to meet him at his office, assuring her that it was he (the defendant) who wanted to see her. In response to that request, the plaintiff went to defendant's office on a Monday afternoon at 2:20 o'clock. The defendant saw the plaintiff, and, excusing himself to her, he went to the rear of his store and 'phoned the detective to come; that Mrs. Hacker was there. In order that there might be no mistake about the identification of Mrs. Hacker, the defendant gave the detective a description of how she was dressed. Not only this, she was directly or indirectly detained by the defendant in his office for a sufficient length of time to enable the detective to come from police headquarters to defendant's place of business. After trapping her in the manner indicated, the defendant allowed her to go away from his office onto a public street in Birmingham, and the moment she reached the street she was approached by the detective who the defendant had summoned. The plaintiff, believing in the loyalty of her employer, after her arrest and detention, while at police headquarters, requested that she be allowed to 'phone the defendant, and was met with a declaration from the detective, "Wood knows all about it," and this coupled with the further declaration, "You don't blame Wood for making an investigation?" In view of the defendant's activity and of the statements made both by the defendant and by the detective, the jury may have found that Wood was personally and directly participating in the arrest, and they might have inferred from his conduct that he then and there approved and ratified the act of the officer. On such findings of fact, the defendant was not entitled to the affirmative charge.

The sixth assignment calls to our attention the judgment of the lower court in overruling appellant's motion for a new trial. The motion, the judgment thereto, and exception thereto are properly presented. From what has been said herein it is obvious that the trial court did not err in overruling said motion.

We find no reversible error; therefore the judgment appealed from will stand affirmed.

Affirmed.