20 So.2d 536

**MONTGOMERY CITY LINES, Inc., v. HAWES.**

**3 Div. 867.**

Court of Appeals of Alabama.

Aug. 22, 1944.

Rehearing Denied Nov. 14, 1944.

Steiner, Crum & Weil, of Montgomery, for appellant.

Hill, Hill, Whiting & Rives, of Montgomery, for appellee.

CARR, Judge.

This is an action by appellee against appellant for personal injuries alleged to have been sustained by him while a passenger on one of appellant's busses in the City of Montgomery, Alabama.

The complaint contains one count. By agreement of parties the pleading was in short by consent. The trial resulted in a verdict and judgment in favor of appellee in the sum of $1000. Appellant filed a motion for new trial which was overruled by the trial court.

In a painstaking brief filed by appellant's counsel, assignments of error are conveniently collected under three headings:

"(a) That no actionable negligence was shown and the trial court should have given to the jury the general affirmative charge requested by appellant."

"(b) That the trial court erred in refusing to allow appellant on cross examination of appellee to interrogate him with respect to his habit of getting drunk, etc., except that it be confined to the very time and on the occasion of the alleged accident."

"(c) That the motion for a new trial should have been granted, in that the verdict of the jury was palpably contrary to the great weight of the evidence, and the conduct of the plaintiff so contrary to the ordinary course of human conduct; and the amount of the verdict was excessive, indicating bias or prejudice."

Appellee claimed, according to his testimony, which was corroborated in some particulars and not denied in any, by his witness Cochrane, that he boarded appellant's bus at the Memorial Hospital on Highland Avenue in the City of Montgomery, that about eighteen months prior thereto his right leg had been amputated at the knee. By the use of an artificial limb, aided by a cane, he walked in a limping or crippled manner. When he boarded the bus and deposited his fare, he turned toward a seat. At this time the driver started the bus off suddenly, causing appellee to fall. His mouth and jaw struck the guard rail to the seat, loosening three of his teeth so that they had to be extracted later and also fracturing his jawbone. He said to the driver, "Look like you were in a mighty big hurry", but did not make further complaint at the time or while he remained on the bus. At the corner of Lee and Montgomery Streets he left the bus and secured transportation to Prattville.

He failed to find the dentist at Prattville that afternoon, but was successful the following morning, when his injuries received the first professional attention.

The testimonial statement of Mr. Cochrane disclosed that with appellee and another, a stranger to witness, he was standing on the corner of the street upon the arrival of the bus. In answer to the question: "What happened when he boarded the bus", witness replied: "Well, he just got on the bus, and when it started off it started off that way. I know, before he was seated. I saw him scrambling around, but I paid no attention to it. I walked away; had other things to attend to."

Dr. Robert O. Dickinson, a witness for appellee, treated the injuries. The doctor testified that appellee came to his office in Prattville the morning following the injury the afternoon before and he found: "The mouth and the jaw was pretty bruised up, the right side: pretty badly bruised, and some of the teeth were loosened. His lip was right badly swollen; evidently from a lick of some kind."

From January 4th to March 20th, the doctor administered around forty treatments in his effort to cure the hurt. During the process of his dental surgery the doctor extracted three teeth and removed a part of a "necrosed bone" that was working out. It was a very painful treatment, so the doctor said, and we have no disposition to question the truth of this statement. Forty visits to a dentist's chair do not occasion the most pleasant experiences in life. The doctor did not make this last utterance, but we do. The doctor did say, however, that his bill was $113 and to replace the lost teeth would cost reasonably $150.

Appellee is a bricklayer by trade and while thus engaged he averages approximately $175 to $200 per month. He lost about six weeks from his work on account of his injuries, according to his statement.

The bus driver admitted operating the vehicle at the place and time in question, but disclaimed any knowledge of the incident and stated emphatically that no one fell or was in any way injured at the time, place and under the circumstances related by appellee and his witness, Cochrane.

■ This primary inquiry became, of course, under the evidence a question for the decision of the jury.

■ It is pressed that no actionable negligence is shown. In this case the com--

plaint alleges negligence in general terms and does not attempt a statement of the quo modo of defendant's culpability. While the question is not raised on this appeal, it is interesting to observe that this is permissible. Leach v. Bush, 57 Ala. 145; Birmingham Ry., L. & P. Co. v. Weathers, 164 Ala. 23, 51 So. 303; Alabama Power Co. v. Carroll, 208 Ala. 426, 94 So. 743.

Several of the cases cited by appellant in brief and insisted upon here for a reversal of this cause make the point that a mere averment in the complaint that the car started suddenly or with a jerk does not, without more, constitute sufficient allegations of negligence. Birmingham Ry., L. & P. Co. v. Parker, 156 Ala. 251, 47 So. 138; Mobile L. & R. Co. v. Bell, 153 Ala. 90, 45 So. 56; Birmingham Ry., L. & P. Co. v. Weathers, supra; Birmingham Ry., L. & P. Co. v. Barrett, 179 Ala. 274, 60 So. 262.

As suggested by appellant's counsel, "There are quite a number of these 'sudden jerk' or 'sudden starting' cases." As recently as May 23, 1944, in an opinion written by Judge Rice, this court upheld the judgment of the lower court in awarding damages to a plaintiff sustained in very much the same manner and under somewhat similar circumstances as claimed in this case. Alabama Power Co. v. Adams, ante, p. 438, 18 So.2d 145.

■ Our courts conform to the rule that a boarding passenger on a street car or bus (as in this case) is presumed to have reached a place of security and safety when he or she has entered the portals of the conveyance, and there is no duty imposed on the driver to keep the car stationary until the passenger is seated. This rule applies in the absence of any circumstances which may surround the passenger, to which the attention of the driver or motorman is directed requiring the car to be held immobile until the passenger is safely seated. Of course, it has application only to the careful starting and not to any unusual sudden jerks occasioned by the careless manipulation of the mechanical starting devices. Birmingham Ry., L. & P. Co. v. Hawkins, 153 Ala. 86, 44 So. 983.

The rule is aptly stated in 10 C.J., p. 947, § 1366: "As a general rule it is sufficient, as regards a boarding passenger, that the car is held stationary until he has reached a place of safety on the car, and hence, although a contrary rule has been stated, it is generally held that it is not necessary to hold a car until a passenger is seated, and that the carrier is not liable for injuries sustained by a passenger while in the act of taking a seat, in consequence of the starting of the car, unless it is started in a violent, unusual, or reckless manner, or unless the unusual conditions and circumstances surrounding a particular passenger, as in case of an enfeebled or infirm passenger, require that the car be held until he is seated." See, also, 13 C.J.S., Carriers, § 733.

The appellee stated: "He started the bus off suddenly and threw me down." His witness, Cochrane testified: "It started off that way * * *." We do not have the benefit here of any gesticulations the witness may have made. The statement indicates that he made some physical demonstration.

The words "sudden" or "suddenly" are very general in their meaning. Much depends on the user's interpretation and understanding. Webster defines "sudden": Happening without previous notice; coming unexpectedly or without common preparation. Webster's 20th Century Dictionary.

In Benjamin v. Metropolitan St. R. Co., 245 Mo. 598, 599, 151 S.W. 91, the Missouri court gives this construction: "On evidence in an action against a street railroad for injuries from negligently and suddenly starting a car, as plaintiff was entering, construing the word 'sudden' to mean happening without notice, coming unexpectedly, held, that the question whether the car was negligently started was for the jury."

Our Supreme Court in Birmingham Ry., L. & P. Co. v. Mayo, 181 Ala. 525, 61 So. 289, 290, has this to say: "Defendant contends that it was entitled to the general charge, on the ground that proof of a sudden jerk, with consequent injury to a passenger, did not suffice to show negligence. The contention cannot be sustained. A jerk is necessarily sudden; and, since some such irregularities of motion are necessarily incident to the management and operation of cars, we have held, in cases where the question arose on the sufficiency of the complaint, that the averment of a sudden jerk, without more, did not show negligence. But here the allegation of the complaint was of negligence generally, and the sufficiency of its proof depended upon the violence of the jerk, the situation of the

568

passenger at the moment, and the carrier's duty to know that situation."

■ From all the facts and circumstances in this case, viewed in connection with appellee's physical handicap, we cannot escape the conclusion that the affirmative charge in appellant's behalf was correctly refused. Wood v. Hacker, 23 Ala.App. 12, 121 So. 437; American Ry. Express Co. v. Henderson, 214 Ala. 268, 107 So. 746; McGahey v. Albritton, 214 Ala. 279, 107 So. 751; Chevrolet Motor Co. v. Commercial Credit Co., 214 Ala. 433, 108 So. 248.

■ We find no authority to support appellant's contention claimed under "(b)" above. Not any have been cited to us in brief. Whether or not the appellee was intoxicated at the time of the injury in question was the material inquiry. He denied that this was a fact, and in this he was supported by Mr. Cochrane, his witness. There was no testimony to the contrary. By proving that appellee was in the habit of getting drunk and that the habit had become fixed or that he had been arrested and tried for public drunkenness, both prior and subsequent to the time of the alleged injury, could in no wise be relevant to show his condition at the time of its materiality, i. e. when he boarded the bus, as he claimed. 45 C.J., § 823, p. 1257; 32 C.J.S., Evidence, § 427, p. 62; Glass v. Memphis & C. R. Co., 94 Ala. 581, 10 So. 215.

■■ We have given very careful and attentive consideration to the insistences as stated in "(c)" above. We are fully aware of our responsibility and duty when such questions arise in this court. The decision cannot be made on the test of what we may have concluded had we been sitting as a nisi prius court or a jury. In effect, we are here urged to disregard the verdict of the jury and all presumptions in favor of the trial court on motion for new trial, because (1) the evidence of the appellee and the circumstances attending his injury present an unreasonable occurrence as related to ordinary events in human affairs, (2) that we should hold the trial court in error for refusing to set aside the verdict and grant a new trial for the reason that the verdict awarded an excessive amount.

■ We adhere to a quotation of this court in Taylor v. State, 30 Ala.App. 316, 5 So.2d 117: "The findings of a trial court are, on appeal, presumptively correct; and the burden is upon the appellant to show error. The verdict of a jury and the judgment of a trial court are solemn things; and they should not be overturned by an appellate court, unless a good, legal reason therefor is shown." See also, Girardino v. Birmingham So. R. Co., 179 Ala. 420, 60 So. 871; Lamar Life Ins. Co. v. Kemp, 30 Ala.App. 138, 1 So.2d 760; Alabama Power Co. v. Adams, ante, p. 438, 18 So.2d 145.

■ Besides loss of time from employment appellee incurred a dental bill of $113, and it was stated that a charge of $150 would be reasonable to replace the lost teeth with an artificial denture. In addition there was a claim for mental and physical pain and suffering.

■ It is difficult to fix a standard by which to measure damages or compensation for physical suffering. The rule leaves this to the sound discretion and good judgment of the jury trying the case, and it is within the province of this body to award such an amount as it believes is reasonable in the light and under guidance of all the facts and circumstances in connection with the injury. The intensity, severity, character and duration of the suffering should be a very material consideration. Mayor, etc., of City of Birmingham v. Lewis, 92 Ala. 352, 9 So. 243; Louisville & N. R. Co. v. Binion, 107 Ala. 645, 18 So. 75; Birmingham Ry., L. & P. Co. v. Coleman, 181 Ala. 478, 61 So. 890.

The jury in this case returned a verdict for $1000. The able, experienced trial judge did not disturb this finding. Under the law, as we view it, we cannot. The cause is due to be affirmed, and it is so ordered.

Affirmed.

BRICKEN, Presiding Judge (dissenting).

On careful scrutiny of the evidence in the record I am of the opinion that it is insufficient to authorize a submission of the question of negligence vel non to the jury.

The allegation of negligence was general but does not relieve the plaintiff from introducing sufficient evidence from which the jury would be authorized to find that the defendant was guilty of negligence that proximately caused the injury of which appellee complains.

Plaintiff was asked by his counsel to state what happened when he boarded the bus on the occasion in question, and answered:

"Well, I boarded the bus at High and Ripley, and when I got my nickel in the slot the driver started off suddenly and threw me down, and my mouth and jaw hit the guard rail of the seat, knocking out three of my teeth, loosening them up where they had to be taken out, and fractured by jaw bone." His witness Cochrane, who saw him when he boarded the bus, was asked by plaintiff's counsel, "Just tell the jury what you saw, and what occurred," and answered: "Well, he just got on the bus, and when it started off, it started off that way, I know, before he was seated. I saw him scrambling around but I paid no attention to it. I walked away, had other things to attend to." "Q. Did the bus start off in an unusual manner? A. Well, ordinarily you drive up to the curb, then he just took on off, like most of them. I did not pay any attention to whether he fell or what happened to him or anything."

On cross-examination, this witness was asked, "This bus started off as it usually does, didn't it? and answered, "Yes sir." "Ordinary way they start off?" "Yes sir."

This condition of the record presents us with the problem of whether or not a sudden start of the bus, without more, under the conditions disclosed by the evidence, was negligence or was conduct from which the jury might infer negligence on the part of the driver of the bus. In Birmingham Railway, Light & Power Co. v. Mayo, 181 Ala. 525, 61 So. 289, it was held that proof of a sudden jerk with consequent injury to a passenger was sufficient to authorize a submission of the question of negligence vel non to a jury, but we do not find that case helpful in the present situation.

The appellee testified that the driver started off suddenly and "threw me down" and appellee's witness Cochrane testified that the "bus started off as it usually did in the ordinary way." Can it be said under the circumstances existing that a sudden start of the bus in the ordinary way without more authorized submission of the question of negligence vel non to the jury? As I read the evidence it indicates nothing more than a mere loss of equilibrium and a fall as a result thereof. It is certainly consistent with that idea. A sudden movement of a bus is one of the usual incidents of travel which passengers must expect. The mere fact that a passenger is injured by a sudden movement of the bus that is being operated in the usual and ordinary way does not, of itself, make out a case of negligence which will render the bus operator liable.

The situation would be entirely different had there been a jerk or jolt that was unnecessarily sudden or violent. A sudden movement of the bus under this evidence is to be regarded as a usual and ordinary movement. The appellee does not complain of a jerk or of anything extraordinary.

In such circumstances it is my judgment that the evidence is insufficient to warrant a submission of the question of negligence, vel non, to the jury.

I have not overlooked the contention of the appellee that he had a cork leg and was limping on the occasion complained of and using a cane or stick. If it be assumed that the driver of the bus knew or was chargeable with notice that the appellee was limping on said occasion there is no evidence in the record, as I read it, from which the jury could infer that the driver of the bus knew that the plaintiff had a cork leg. Neither am I willing to affirm that it was negligent conduct on the part of the bus driver to cause the bus to move in the ordinary and usual manner even if it be conceded that such operation involved a sudden movement merely because it appeared that the passenger was limping; nor am I persuaded that the jury could have found that appellee would not have lost his equilibrium had he not been required to use a cork leg.

For the reasons stated it is my judgment that the affirmative charge requested by the appellant in writing should have been given and that the judgment appealed from should be reversed and remanded.