40 So.2d 882

### CRESCENT AMUSEMENT CO., Inc. v. SCOTT.

### 7 Div. 969.

Court of Appeals of Alabama.
March 8, 1949.

Rehearing Denied March 29, 1949.

Dortch, Allen & Meighan, of Gadsden, for appellant.

336

Miller & Pittman, of Gadsden, for appellee.

HARWOOD, Judge.

The complaint below contained two counts, each alleging that defendant, through its agents or servants acting within the line and scope of their employment, "unlawfully caused plaintiff to be arrested and imprisoned on a charge of disorderly conduct for one day, viz, on the 25th day of November, 1946."

Defendant's demurrer to the complaint being overruled, pleading was in short by consent.

. A jury trial resulted in a verdict in favor of the plaintiff, damages being assessed by the jury at $1000.00. Judgment was duly entered by the court pursuant to said verdict.

Its motion for a new trial being overruled, the defendant below, appellant here, perfected an appeal to this court.

In the trial below the plaintiff testified that on the night of 25 November, 1946, at about ten minutes after ten o'clock, he received permission of the cashier, and the ticket collector, at the Princess Theatre, in Gadsden, to go into the theatre. He alleges he entered for the purpose of meeting his brother, who was to join him either in the theatre, or in a nearby grill.

He went into a small lounge, adjoining the men's room, lit a cigarette, and had been there about ten minutes when a police officer, Mr. Smith, entered and told him: "Wait a minute, buddy. I want to talk to you. The cashier has made a complaint against you."

Upon inquiry by appellant as to the nature of the complaint, appellant was told

by Officer Smith to wait there, and he would call Mr. Simmons, a police lieutenant.

Smith left, and another officer, Mr. Efford, came into the lounge.

In two or three minutes, Officer Smith returned with Lieutenant Simmons. Appellant asked Simmons "what it was all about," and Simmons told him he (Simmons) would find out, and let him know in five minutes.

Lieutenant Simmons then instructed the other officers to take appellee to the City Hall. There appellee was placed in jail where he remained until the next morning, when he made bail, apparently being charged with offense of "disorderly conduct."

Mr. T. E. Greenhaw testified that he was employed by the Princess Theatre during the month of November 1946 as a doorman.

The cashier of the theatre, Mrs. Arnold, asked him to "check" on appellee in the lounge, and he "went in there." In response to the question propounded to him by appellee's counsel on direct examination, "Did she or not direct you to go and call the police officers?" this witness replied: "It wasn't exactly like that. I said, 'do you want me to call them,' and she said 'yes.' You might say I assumed it was to go get them."

When the manager and the assistant manager of the theatre were absent Mr. Greenhaw "took orders" from Mrs. Arnold.

The appellee also introduced the interrogatories propounded by him to appellant, and the answers thereto. The material portion of these answers were to the effect that no employee of appellant requested or directed the arrest of appellee, but merely made a statement to police officers in reference to appellee's conduct in the rest room; that certain employees did testify at the trial of appellee in the Recorder's Court in Gadsden on the day appellee was convicted of the charge of disorderly conduct because of his behavior in the theatre on the night of 25 November 1946; and that the duties of Mrs. Arnold, the cashier, were to stay inside the theatre, to see that quiet was maintained therein, and to see that all who entered the theatre had a ticket, or permission, to enter.

For the defense Miss Lois Morgan, a ticket taker in the Princess Theatre, testified that between 6:15 P.M. and 6:30 P.M. on the 25 November 1946 the appellee asked her if he might use the lounge in the theatre. She told him he could. She did not see him again after that, nor did she talk to any police officers that night.

Mrs. Arnold, the theatre cashier, testified that she saw appellee enter the lounge in the theatre between 6:15 P.M. and 6:30 P.M. on the day in question. She observed the appellee in the lounge later at about 8:00 P.M. as she was on her way to the theatre office. As she returned from the office he was still in the lounge, and at this time he was standing in the lounge with the fly of his trousers open, and his private parts exposed.

She then asked one of the ushers to ask appellee to leave. The usher returned and stated he was afraid to do so. She then asked the usher to see if there was a policeman in the theatre. Officer Efford was in the theatre and she told the usher to tell Mr. Efford of appellee's actions, and to get him to leave.

Mrs. Arnold states she did not at any time request any police officer to arrest the appellee, nor ask that any charge of disorderly conduct be preferred against the appellee. She did not talk to any officer until after appellee had been taken from the theatre by the police. A few minutes afterwards Lieutenant Simmons returned and interviewed her and she merely stated to him what she had observed as to appellee's conduct.

Gideon Van Pelt, an usher in the theatre, and who was 16 years of age at the time of this occurrence, testified that he first saw appellee in the lounge in the theatre on the night in question at about 7:30. He saw him again in the lounge at around 9 o'clock, and at this time appellee was exposing his private parts, and was in such position in the lounge as to be seen from the lobby.

This witness did not ask any officer to arrest appellee, nor did he hear any other

employee of the theatre make any such request of any officer.

Officer Smith testified that he and a fellow officer, Mr. Efford, both comparatively new on the police force, entered the Princess Theatre about 10:15 P.M. on the night of 25 November 1946. He was informed by one of the ushers that a suspicious character had been in the lounge of the theatre for about four hours. Mr. Smith then apparently entered the lounge and saw appellee sitting on a settee, where he could be observed from the lobby. At this time appellee's trousers were unbuttoned and his privates exposed. Officer Smith then requested one of the ushers to go to police headquarters and tell Lieutenant Simmons to come to the theatre. He did not at this time place appellee under arrest No request was made by any employee of the theatre that appellee be arrested on any charge.

Officer Efford's testimony is largely corrobative of Officer Smith's testimony.

Lieutenant Simmons, accompanied by Officer Gramling, arrived at the theatre within five minutes after he had been sent for.

Lieutenant Simmons testified that when he and Officer Gramling arrived at the theatre he was told by Officer Smith what he (Smith) had observed of appellee's conduct. He and Gramling then entered the lounge of the theatre. The appellee was standing in the lounge, with his trousers open and his privates exposed. When appellee saw the officers he turned and walked toward the back of the lounge, buttoning his trousers as he did so Simmons then took appellee by the arm, and told him he was under arrest. He then took appellee to the City Hall. In a few minutes Simmons returned to the theatre and talked to some of the employees. Thereafter, and after conferring with the Chief of Police, Lieutenant Simmons charged appellee with disorderly conduct, upon instructions of the Chief of Police.

Lieutenant Simmons stated that he talked to no employee of the theatre prior to arresting appellee, nor did any employee at any time prior to, or subsequent to appellee's arrest request that an arrest be made or that any charge be made against appellee.

In rebuttal the appellee introduced as a witness Mr. J. C. Harris, an Instructor in the Alabama School of Trades in Gadsden. Mr. Harries testified that appellee was a student in his classes in the school during the month of November, 1946. He heard of appellee's arrest the day following the disturbance in the theatre, and remembered, independently of his record, that appellee was in attendance in his class that evening from 7:00 P.M. to 9:00 P.M., having come into the class tardy. The roll was called at 5:40 P.M., and he was marked absent. Rechecking the roll at 9:00 P.M., the record was changed and the appellee was marked as present.

Over the appellant's objection, on the ground that "there was higher and better evidence," this roll record was admitted in evidence.

Appellee being recalled as a witness testified that he attended classes at the Trades School from about 7:10 to about 9:15 on the night of 25 November, 1946; that he then carried his brother to Attalla, and after this came back to the Princess Grill, arriving there about 10:00 P.M. After drinking a cup of coffee he left and went into the theatre, having an appointment to meet his brother in the lobby.

In surrebuttal the appellant offered in evidence Ordinances Nos. 36 and 37 of the Gadsden City Code, which declare respectively that any person who exposes his person in public in an indecent manner shall be guilty of an offense, and that any person who appears in public in an indecent or lewd manner is guilty of an offense.

The appellee has alleged in his complaint that appellant, through its servants, acting within the line and scope of their duties, caused him to be arrested and imprisoned on a charge of disorderly conduct.

Where one merely reports to an officer what he has seen, and an arrest and imprisonment of a third person follows from an investigation subsequently made by the officer, the arrest and imprisonment is the act of the officer, and not of the informant. Wofford Oil Co. v. Stauter, 26

Ala.App. 112, 154 So. 124; Rich v. McInerny, 103 Ala. 345, 15 So. 663, 49 Am. St.Rep. 32. And if the officer acts solely on his own initiative, the informant is not liable even though he directs or requests such arrest, and even though he be actuated by malice or other improper motive. Standard Oil Co. v. Davis, 208 Ala. 565, 94 So. 754.

■ On the other hand one may be held responsible as the instigator of an arrest without expressly requesting or demanding it if the facts surrounding the arrest reasonably create a permissible inference of such instigation. Wood v. Hacker, 23 Ala. App. 12, 121 So. 437.

Under the developed facts of this case, the only evidence tending to create any inference that the appellant may have instigated the arrest of appellee is his (appellee's) testimony that when Officer Smith first came into the lounge he stated "Wait a minute, buddy. I want to talk to you. The cashier has made a complaint against you."

To read into these words an inference that the cashier had requested or directed that appellee be arrested requires resort in a high degree to speculation, conjecture, and surmise. Certainly at most the words of Officer Smith could create nothing more than a scintilla of an inference that the arrest may have been instigated by appellant's employee or employees. That appellant caused appellee's arrest is the very nexus of this suit. The failure of appellee to establish this vital element by evidence of no more probative force than a speculative inference from a possible scintilla would in and of itself cause a reversal of this cause because of the lower court's denial of appellant's motion for a new trial, which motion contained grounds covering this point.

■ The appellee has charged in his complaint that appellant unlawfully caused his arrest and imprisonment on a charge of disorderly conduct. Having made this allegation, the burden was on the appellee not only to show that appellant caused his unlawful arrest and imprisonment, but also that appellant caused the unlawful arrest and imprisonment on the charge

specified. United States Cast Iron Pipe & Foundry Co. v. Henderson, 22 Ala.App. 448, 116 So. 915, certiorari denied 217 Ala. 520, 116 So. 917.

■ Appellee's evidence contains nothing that arises beyond barest scintilla, if that, tending to establish this matter charged in the complaint. Smith's alleged statement that the theatre cashier had made a complaint against appellee in nowise tends to show that the cashier requested appellee's arrest on the charge of disorderly conduct. Appellee's witness Greenhaw testified merely that at the cashier's request he "checked" appellee in the lounge and thereafter he assumed that the cashier wished to notify the police. When the police came into the theatre he informed them that a man had been in the rest room for four hours, and was "acting kind of strange." He thereafter pointed out appellee to the officers. Nothing in Greenhaw's testimony implies any request on his part that the officers arrest appellee on a charge of disorderly conduct.

All of the theatre employees deny making any request at all for appellee's arrest. Certainly no inference is allowable from the testimony of any of these theatre employee witnesses tending to show that they instigated appellee's arrest on any charge whatsoever.

All four police officers likewise testified that no employee or agent of the appellant at any time requested or directed appellee's arrest. Lieutenant Simmons testified that appellee was first held after his arrest for investigation, and that the charge of disorderly conduct was not made against him until the day following his arrest, and then upon the sole direction of the Chief of Police, and without any consultation with any one connected with appellant.

■ Had the lower court granted appellant's requested affirmative charge, we would not be willing to say that his action in the premise was erroneous. The lower court however refused such requested charge. Indulging all intendment in favor of this action, which could under the evidence include nothing more than the possibility of a scintilla of evidence tending to show that appellant caused appellee's ar-

rest on the specific charge of disorderly conduct, it yet remains that appellant's liability in so far as this element is concerned, must rest upon speculation pure and simple. This is no proper basis for a verdict and judgment. Continental Casualty Co. v. Paul, 209 Ala. 166, 95 So. 814, 30 A.L.R. 802; St. Louis & S. F. R. Co. v. Dorman, 205 Ala. 609, 89 So. 70. The appellant's motion for a new trial should have been granted also because of the insufficiency of the evidence tending to show that appellant caused appellee's arrest on the charge of disorderly conduct as alleged in the complaint.

Numerous other points are argued in appellant's brief. Other than appellant's contention that it was not shown by sufficient evidence that any of the employees of the theatre present when appellee was in the theatre had authority to act for appellant in causing his arrest, none of the points in our opinion are likely to arise in another trial of this cause. As to this matter of employee's authority, we are of the opinion, that under all of the evidence a jury question was presented as to whether Mrs. Arnold did possess this authority to act for appellant.

For the reasons indicated this cause is due to be reversed and remanded, and it is so ordered.

Reversed and remanded.