## Bowe and wife' vs. Rogers and wife.

*December 3 — December 17, 1880.*

APPEAL TO SUPREME COURT. *(1) Effect of order refusing a new trial pro forma. (2) Credibility of witnesses: Court and jury.*

LIBEL. *(3) Words libelous per se. (4) Punitory damages: Excessive damages.*

1. Where an order refusing a new trial purports to be made *pro forma*, and is made without argument for the moving party, *and without his insisting upon a hearing*, it must be treated here as if made after argument and on full consideration.

2. Both parties having produced numerous witnesses, and the testimony being conflicting, this court declines to decide that the jury should not have given credit to the respondents' witnesses.

3. The female defendant caused to be circulated printed hand-bills, which charged the female plaintiff (who was a dressmaker) with retaining material furnished her to be made into a dress for defendant, and imputed to her the crime of larceny. *Held*, that the article was libelous *per se.*

4. The case being one in which punitory damages might be allowed, this court does not find in a verdict for $2,000 proof of improper motive in the jury, and refuses to reverse a judgment for that amount.

APPEAL from the Circuit Court for *Winnebago* County.

Action for libel.     The libelous matter was circulated in the form of printed hand-bills, and was as follows:

"HOW IT PAYS TO PATRONIZE SOME DRESSMAKERS.

"During the month of August last, *Mrs. S.·A. Bowe*, then living on Main street near Mr. Dobson's, who had been in the

habit of getting milk of me at the rate of four quarts per day until it had reached fifty quarts at five cents, two dollars and fifty cents, and she finding that I had a fine cassimere dress pattern which she was very anxious to get and make up, and under pretended friendship and old acquaintance would take extra pains with the dress and would make it cheaper than any other dressmakers, and claiming that she knew more about the style, etc., got my confidence so that I let her have the goods; eleven and one-half yards of fine cassimere, cost one dollar and sixty-five cents per yard, twenty-three inch double, and a full ball of gros-grain ribbon, twelve yards, two and a quarter inches wide, to use off from; also one and one-half yards gros-grain silk to use for trimming; and during making came and said that she wanted one yard more of silk to finish trimming. I gave her two dollars in money to get it with, making in all two and one-half yards of silk. When she took the pattern, she said there was a good deal more than I wanted,— would be enough left to make a Dolman or anything else. When the dress was brought home, I was very poorly, and not able to examine the matter at all. I paid her four dollars for making; it was all that she asked. I laid the goods away until I felt better, where they were not disturbed by any one. Upon examination, to my surprise, found only a little more than one yard of cassimere, and one and one-half yards of gros-grain ribbon, and no silk. I was astonished and out of patience, and went to her shop to see her for a settlement — she had never paid anything for her milk, — but for my pains was terribly abused. I then went to several dressmakers of respectability, and all, with no exception, have estimated the goods at not more than seven yards of cassimere, one and one-quarter silk trimming, and three to three and one-half yards ribbon. Dress was made with sham skirt to the knee, and only two ruffles, very scanty trimmed. It has been examined by a dozen or more persons, and all pronounce it a big shame and an outrage. The dress and all the pieces are here for

examination by any one having any curiosity ( and further, if necessary, the dress may be all ripped to pieces and the exact amount of the goods ascertained ). It is all made so scant and cheap that I have no pride in the dress.

" I think that any lady who is a church member, as she is, and boasts of her British Aristocratic blood, and will condescend to such meanness, must have a cheek harder than a government mule, and feel it my duty to expose her that other ladies may shun her and make her know the eighth commandment.                    MRS. C. F. ROGERS."

After a verdict for the plaintiffs for $2,000, defendants moved for a new trial, on the grounds that the verdict was contrary to the evidence and that the damages were excessive. The motion was denied; but the order of denial was stated therein to be made *pro forma*. Defendants excepted to the order; and to so much of the judge's charge as stated that the publication in question, if false, was actionable *per se;* and they appealed from a judgment on the verdict.

For the appellants there was a brief by *B. E. Van Keuren,* their attorney, with *C. E. Pike* of counsel, and oral argument by *Mr. Pike.*

For the respondents there was a brief by *Charles W. Felker,* and oral argument by *W. B. Felker.*

COLE, C. J. We do not see that the defendants are in a position to object that the circuit judge denied the motion to set aside the verdict and grant a new trial *pro forma*. If they were entitled to the exercise of any other judicial discretion and judgment on the motion than was actually given it by the circuit judge, they should have insisted upon such exercise when the motion was decided. As the case stands now, we must treat the order as though the motion were decided after argument, on full consideration, and denied for reasons which were satisfactory to the conscience and judgment of the circuit judge.

But the learned and accomplished counsel for the defendants insists that the circuit court erred in refusing to set aside the verdict as being contrary to the evidence. He claims that there was a clear and decided preponderance of testimony to sustain the defense; that the bias, contradictions and falsehood of the principal witnesses introduced on the part of the plaintiffs are so apparent that the jury were not warranted in believing their statements. We do not think there is any ground for saying in this case — if, indeed, it is our province to say it in any case — that the jury should not have given credit to the statements of witnesses who came before them and testified in their presence. It is common experience that the testimony of a witness on paper may sometimes seem contradictory and untrustworthy, yet the appearance of the witness on the stand, his fair, candid manner of testifying, may lead the mind to attach much credit to what he says. Of course, a case might be imagined where it would be the duty of the appellate court to declare that the testimony of witnesses to certain facts was so unsatisfactory, so contradictory and improbable, as to be self-destructive, and have no probative force as evidence. But this is not such a case. Here the truth of the alleged libel necessarily involved an inquiry as to the quantity of materials furnished by the defendant *Mrs. Rogers* to the plaintiff *Mrs. Bowe* for the purpose of making the dress, and the quantity of material returned. On these points the witnesses on the one side and the other directly contradict each other. It was for the jury to decide upon these conflicting statements, and determine which set of witnesses was the more worthy of credit. We do not feel justified in saying that the jury should not have believed the testimony of *Mrs. Bowe*, and the statements of witnesses which tended to support her. This would be dangerous ground to go upon; for it is obvious that it was for the jury to judge as to what facts were established by the evidence.

It is said the truth of the charge in the alleged libel is es-

tablished by the defense, if it be proved that a substantial or material portion of the goods mentioned in the hand-bill were taken or retained by *Mrs. Bowe.* Concede this to be so; still, *Mrs. Bowe* positively states that she returned all the material received which she did not use in making the dress. She claims that the dress was changed or altered after she returned it, and some of the material taken out. Witnesses for and against that theory were produced and sworn on the trial. It was for the jury to say what the real fact was in that regard.

It is further insisted that the court erred in refusing to set aside the verdict upon the ground that the damages are excessive. This was an action where exemplary or punitory damages could be given, under our decisions, if the acts of the defendants in the printing and publication of the libel were wanton and malicious. Unless the damages awarded by the jury are so great as to show that they were governed by improper motives in fixing the amount, this court cannot interfere on that ground. That rule has been often affirmed in this court. *Birchard v. Booth,* 4 Wis., 67, and *Cramer v. Noonan,* id., 231, and cases cited in the notes. There were some circumstances of aggravation attending the publication of the libel, from which the jury might have inferred express malice, and a purpose to injure the plaintiff *Mrs. Bowe;* as, for example, its distribution indiscriminately to the people as they came out of the church at the time of the ecclesiastical trial, as testified to by one witness. But, as the damages were very much in the discretion of the jury, we see no sufficient reason for interfering with them.

The circuit court charged that the publication, if false, was libelous *per se.* It is claimed that this was error. But it seems to us there can be no doubt as to the character of the publication, and that the court put the proper construction upon its language. The question whether the words imputed to *Mrs. Bowe* a criminal offense was one for the court. *Filber v. Dauterman,* 28 Wis., 134. It is unnecessary to go into

any analysis of the publication. The, charge of retaining material which was furnished for the dress is clearly made or implied. In the last paragraph the crime of larceny is indirectly imputed to *Mrs. Bowe.* That such a charge is necessarily injurious, and occasions damage and degradation in society to any respectable woman, is too plain for discussion. *Cary v. Allen*, 39 Wis., 481.

*By the Court.*— The judgment of the circuit court is affirmed.