M. E. WOODLING *vs.* GEORGE KNICKERBOCKER and others.

November 28, 1883.

**Libel—Question for Jury.**—Whether a placard placed on a piece of furniture standing on the sidewalk in front of a store, with the words "Taken back from W., who could not pay for it; to be sold at a bargain," is a libel upon W., is a question for the jury.

**Same—Liability of Other Partners for Libel by One.**—One partner in a firm engaged in dealing in furniture and draperies is not, merely because of being a partner, liable for a libel published by another partner, or a servant of the firm, by placing a placard on a piece of furniture, the property of the firm, offering it for sale.

**Trial—Taking Case from Jury—Ordering Judgment for Defendant.**— A trial court cannot take a case from the jury and order judgment (not of dismissal) for defendant, unless he is entitled to it on the pleadings. It cannot do so on the pleadings and *testimony*.  *Held*, that there was evidence in the case requiring it to be submitted to the jury.

Plaintiff brought this action in the district court for Hennepin county, against the defendants George Knickerbocker, S. E. Knickerbocker and J. G. Layman, as partners doing business under the name of the Knickerbocker Furniture Company, to recover damages for the alleged libels mentioned in the opinion.  At the trial, before *Young*, J., and a jury, there was evidence that a table which plaintiff had bought from the Furniture Company, and returned as unsuitable, was exposed in front of its shop, with this placard upon it: "Taken back from Dr. Woodling, who could not pay for it; to be sold at a bargain."  Plaintiff removed this placard, and was told by defendant

George that he "could put on a better one than that." Within half an hour afterwards, a second placard was placed on the table, reading: "This was taken back from Dr. Woodling, as he would not pay for it; for sale at a bargain," and also, and about two feet from it, the following: "Moral: Beware of dead-beats." The plaintiff asked George Knickerbocker, in Layman's presence, to remove the placard, and he refused. In answer to plaintiff's inquiry as to who placed the placard there, Layman said that the man who had placed it there had gone to dinner. The placards attracted the attention of the public, and Layman saw many people stop on the sidewalk and read them. It was admitted that Layman and S. E. Knickerbocker were members of the partnership.

The plaintiff having rested his case, the counsel for defendants moved for judgment for each of them, on the pleadings and testimony. The motion was granted as to the defendants Layman and S. E. Knickerbocker, and denied as to the defendant George Knickerbocker. A salesman of the Knickerbocker Furniture Co. testified that the first placard was written by its book-keeper; that he did not know who placed it upon the table; that it was he and not George Knickerbocker who was present when plaintiff took off the first placard, and who made the threat to put on another; that he himself wrote the second placard and the warning, and put them on the table, on his own responsibility, and without direction from any one. The court ruled that the first placard was not libellous; that the other two, taken together, were libellous, and that there was no evidence to go to the jury inculpating George Knickerbocker, and accordingly directed a verdict in his favor. A new trial was denied, and the plaintiff appealed.

*Welch & Botkin* and *J. E. Miner*, for appellant.

*John G. Woolley*, for respondents.

GILFILLAN, C. J. The libels alleged in the complaint were placards placed upon a table belonging to and standing upon the sidewalk in front of the place of business of the "Knickerbocker Furniture Company," a firm engaged in dealing at wholesale and retail in furniture and draperies, in Minneapolis. The defendants are alleged to be partners in that firm, and the complaint charges that they, and each

of them, put the placards on the table. The first placard read: "Taken back from Dr. Woodling, who could not pay for it; to be sold at a bargain." This was removed by plaintiff, and soon after another was placed on the table, which read: "This was taken back from Dr. Woodling, as he would not pay for it; for sale at a bargain;" and near this, at the same time was placed another: "Moral: Beware of dead-beats." These two, read together, as they were undoubtedly intended to be, constitute a gross libel. They are clearly defamatory on their face. The first one, that removed by plaintiff, comes within the second class of words classified in *Pratt* v. *Pioneer Press Co.*, 30 Minn. 41, *i. e.*, those that are reasonably susceptible of a defamatory meaning as well as an innocent one, according to the occasion and circumstances of using them. What meaning, whether injurious or not injurious to plaintiff, they would convey to ordinary men, who read them without a knowledge of the transaction to which they referred, was for the jury to determine, in view of the circumstances under which they were exposed to the public perusal; and whether they were libellous or not ought to have been left to the jury to say.

It appeared on the trial that the defendants Layman and S. E. Knickerbocker were members of the firm. How George Knickerbocker was connected with it did not appear. And it did not appear that S. E. Knickerbocker had anything to do with, or knew anything of, the placing of the placards on the table. She cannot be held liable unless by reason of it having been done by her partner, or by some one in the service of the firm. One can be held liable for a libel published by another only because he has in some way authorized him to make the publication. There is nothing in the nature of the business of this firm—that of dealing in furniture and draperies—from which authority to one partner or to a servant to gratuitously publish a libel can be implied. The case is different from that of a partnership whose business is publishing or selling either books or newspapers, where each partner is supposed to have authority to publish or sell, and to determine what shall be published or sold, and also from that of the necessary correspondence of a firm, where each partner is presumed authorized to conduct it, and to determine on its substance and terms.

A dismissal of the action as to S. E. Knickerbocker, or a direction to the jury to find a verdict in her favor, would have been proper; but we know of no authority in a trial court to take a case from the jury and order judgment (not of dismissal) for a party, unless he is entitled to it on the pleadings alone. It cannot be done on the pleadings and *testimony*.

As to George Knickerbocker and Layman, there was evidence to go to the jury—pretty strong evidence—that George Knickerbocker either placed or incited others to place all the placards on the table; and from the fact that Layman was present, and saw certainly the last two placards, knew they were put on his property by one of his servants, and acquiesced in George Knickerbocker's refusal to remove them at plaintiff's request, the jury might well conclude that all were placed on the table either by his express authority or his assent. Though there was evidence to a contrary effect, still the case ought to have gone to the jury. To hold either of the defendants, it was not necessary that the placards should have been placed on the table with his own hand. If he authorized, incited, or encouraged any other person to do it; or if, having authority to forbid it, he permitted it; or, having authority to remove them, he allowed them to remain, the act was his.

Order reversed, and new trial ordered.