Solverson vs. Peterson.

SOLVERSON, Respondent, vs. PETERSON, Appellant.

*September 23 — October 13, 1885.*

*Libel.*

To state in writing of a man that he "has turned into an enormous swine, which lives on lame horses," and that he "will probably remain a swine the rest of his days," is libelous *per se.*

APPEAL from the County Court of *Dodge* County.

Action for libel. The case is sufficiently stated in the opinion.

For the appellant there was a brief signed by *Brown & O'Connor*, of counsel, and *A. K. Delaney*, attorney, and the cause was argued orally by *Mr. Brown*. They contended, *inter alia*, that if it is to be understood literally the charge that the plaintiff had become a swine is not libelous, for to allege a known impossibility is not actionable. *Fen v. Dixie*, Jones (W.), 444, Pl. 5; *Ausman v. Veal*, 10 Ind. 355. If it is to be understood figuratively — if the word is used in an acquired sense, then an averment by way of inducement of that acquired sense is necessary; but we have here neither averment nor innuendo. Townshend on S. & L. 180, *n*; Folkard's Starkie on S. & L. (Wood's ed.), § 443; *Rawlings v. Norbury*, 1 Foster & F. 341; *Rex v. Horne*, 2 Cowp. 672; *Hays v. Mitchell*, 7 Blackf. 117; *Angle v. Alexander*, 7 Bing. 119; *McGregor v. Gregory*, 2 Dowl. (N. S.), 769; *More v. Bennett*, 48 Barb. 229, 232; 30 How. Pr. 177, 180; *Capel v. Jones*, 56 Eng. C. L. 259; *Hearne v. Stowell*, 12 Ad. & El. 719. A publication which, like this, does not affect its subject in his business, profession, or official capacity, and does not impute to him any infectious disease, is not libelous unless it imputes some offense or moral delinquency. *Rice v. Simmons*, 2 Harr. 417; *S. C.* 31 Am. Dec. 766; *Colby v. Reynolds*, 6 Vt. 489; *S. C.* 27 Am. Dec. 574. Even if it can be said to subject the plaintiff to ridicule in the general and popular sense of that term, he is not subjected to that species of contemptuous derision known to the law of libel as "ridicule." In its original and legal sense that word is substantially synonymous with the terms "public hatred" and "contempt," and is so used in the leading cases, and in all the cases in this court. In no case has mere raillery, or even ill-natured abuse without the imputation of moral delinquencies, been held libelous. See *Cropp v. Tilney*, 3 Salk. 225; Holt, 426; *Thorley v. Lord Kerry*, 4 Taunt. 355; *Capel v. Jones*, 4 C. B. 259; *Steele v. Southwick*, 9 Johns. 214; 1 Am. Lead. Cas. 129; *Cramer v. Noonan*, 4 Wis. 231;

*Cary v. Allen,* 39 id. 481; *Cottrill v. Cramer,* 43 id. 242; *Platto v. Geilfuss,* 47 id. 491; *Gough v. Goldsmith,* 44 id. 262.

For the respondent the cause was submitted on the brief of *H. K. Butterfield.*

ORTON, J. The appellant, the defendant in the circuit court, interposed a general demurrer to the complaint, which was overruled. The only question on this appeal is whether the alleged publication is libelous. The main facts stated in the complaint are as follows: The libelous article was published by the defendant of and concerning the plaintiff in the Oconomowoc *Local,* a paper published in Waukesha county, and in circulation in the county of Dodge, where the plaintiff resided, and which was read and understood by many persons, and tended to expose the plaintiff to public ridicule, and did so expose him, and it was published by the defendant for the purpose of exposing him to public hatred, contempt, and ridicule. The main charges in said publication are as follows: The plaintiff is spoken of as the "king of the Norwegians,— a character so mystical and eccentric that every one would be interested to hear from him." "He takes us back to the time when the star of human progress was just rising above the dark horizon of human ignorance; when the king of Babylon was changed into an ox and lived on grass." "But let us doubt such things no longer, when I tell you that at the present time this great king, in whose veins courses the blood of the ancient viking, has turned into an enormous swine, which lives on lame horses," etc. "He still retains the faculty of speech." "Great sympathy is felt for him by Norwegians all over the world, who keep sending him lame horses. Doctors say there is no hope for his recovery, and he will probably remain a swine the rest of his days."

The plaintiff is here ironically spoken of as a king and a

descendant of kings, as if he had assumed such a high character among his countrymen, and he is compared to the king of Babylon, who fell so low as to eat grass in the fields, and he is said to have turned into an *enormous swine*, living upon the *carrion* of lame horses, as the public not cognizant of the particular meaning intended by the allusion to "lame horses" may well understand, and he barely retains the faculty of speech, and there is no hope of his recovery, and he will probably always remain a *swine*. Is not this the most offensive kind of ridicule and most intensely contemptuous, and does it not tend, and was it not intended, to bring the plaintiff into ridicule and contempt, and to injure his standing and reputation as a citizen? How could a man be lower, meaner, or more filthy than to have the character, habits, and ways of a *swine*. Of course no one would understand that the defendant intended to charge the plaintiff with being veritably a hog. The plaintiff is compared with this low and filthy animal to indicate that he has fallen to the very lowest degree of human degradation, morally, intellectually, and physically. It was supposed that the prodigal had fallen to the very lowest condition when he became the associate of swine, and lived upon the same food. "Words which hold the plaintiff up to contempt, hatred, scorn, or ridicule" are libelous. Odgers, Lib. 21.

This is the common definition of libel. Is it difficult to see that these words fall within this definition? Words of comparison may be as libelous as those importing a direct charge; such as, "He is thought no more of than a horse-thief and a counterfeiter." *Nelson v. Musgrave*, 10 Mo. 648. "A frozen snake." *Hoare v. Silverlock*, 12 Q. B. 624. "An itchy old toad." *Villers v. Monsley*, 2 Wils. 403. "He is a black sheep." *M'Gregor v. Gregory*, 11 Mees. & W. 287. "Likening persons to certain animals," such as imputing to a person their qualities, may be libelous. Folk.

Starkie, Sland. 165. The learned counsel of the appellant claims that the language used in this publication is equivocal or ambiguous. If these words mean anything, they mean to attribute to the plaintiff the meanest of character and conduct. They certainly have not two meanings, one of which may be innocent and the other libelous. They are not ambiguous. It is further claimed that the words are not libelous because their allusions to certain transactions, which give to them a particular meaning, are not understood or explained by innuendo, and hence they have a doubtful meaning; and it is said in the brief of the learned counsel for the appellant, by way of illustration: "A man may be called a swine because he is gluttonous, or because he is grasping or self-seeking, and the court cannot say in which of these senses the word is here used." If this word may be understood to impute either or both of these base qualities to the plaintiff it is sufficient.

In comparing the plaintiff's present character and condition with that of a swine, the publication does not limit the imputation to any particular quality of that animal, and therefore the public may well understand that it was intended to impute to him all of the offensive qualities of a hog, and certainly the article was not intended to give the plaintiff the credit of having any of the good qualities of that animal, if it has any. The obvious meaning of the publication is well expressed by the learned counsel in his brief, even at a close risk of a repetition of the libel, when he says: "It seems most likely, therefore, that the libelous charge which rankled and festered in the plaintiff's breast for the nine long weary months between the publication of this alleged libel and the commencement of this action *was that he, the king of the Norwegians, who had so long enjoyed the confidence and esteem of the community, had become a swine, or, to put it as it is more commonly and vigorously put, a hog*," *i. e.,* like a hog, as far as a man can possess the offen-

sive characteristics of a hog. A precise precedent of this libel may not be found in the books, but it clearly falls within the rule of all cases in which the libel contained a gross imputation upon the character and conduct of the plaintiff, tending to bring him into ridicule and contempt, and the citation of the thousands of quite similar cases is unnecessary. The sum of all of them is "that language in writing (concerning an individual as such) is actionable *per se*, which denies to a man the possession of some such worthy quality as every man is *a priori* to be taken to possess, or which tends to bring a party into public hatred or disgrace, or to degrade him in society, or to expose him to hatred, contempt, or ridicule, or which reflects upon his character or imports something disgraceful to him, or throws contumely on him, or contumely and odium, or tends to vilify him or injure his character, or diminish his reputation, or which is injurious to his character, or social character, or shows him to be immoral or ridiculous, or imputes to him a *degradation* of character," etc. Townsh. Sland. & Lib. § 176.

It is too clear for further argument that this case falls far within these rules. The demurrer was properly overruled.

*By the Court.*— The order of the circuit court is affirmed, and the cause remanded for further proceedings according to law.

See note to this case in 25 N. W. Rep. 16.— REP.