32 So.2d 769

### TIDMORE v. MILLS.
### 2 Div. 756.

Court of Appeals of Alabama.
Aug. 15, 1947.

Rehearing Denied Sept. 2, 1947.

\* \* \*

Walter P. Gewin, of Greensboro, and Ward & Ward, of Tuscaloosa, for appellant.

W. R. Withers, of Greensboro, and Mc-Queen & McQueen, of Tuscaloosa, for appellee.

250

CARR, Judge.

The judgment in the court below responds to a verdict in favor of the plaintiff under Count 3 of the complaint. The Reporter will set out this count in the report of the case.

The claimed faults of the count are attacked by both a motion to strike certain parts thereof and also by demurrers.

By the approaches indicated it is posed, inter alia, that the innuendo or explanatory averments unduly enlarged the purport of the expressed or published words beyond their natural or accepted meaning. It is a legal truism that to do so would violate a rule of pleading in libel causes. Penry v. Dozier, 161 Ala. 292, 49 So. 909; Marion v. Davis, 217 Ala. 16, 114 So. 357; Meadors v. Haralson, 226 Ala. 413, 147 So. 184.

However, it is equally well established by the authorities that if the publication is libelous per se the allegations in the complaint which comprise or embrace the innuendo become mere surplusage and may be, as against demurrers, regarded as such. Penry v. Dozier, supra; Choctaw Coal & Mining Co. v. Lillich, 204 Ala. 533, 86 So. 383, 11 A.L.R. 1014; Peinhardt v. West, 217 Ala. 12, 115 So. 88; Krause v. Sentinel Co., 60 Wis. 425, 19 N.W. 384.

■ In other words, the rule that requires the plaintiff, by his innuendo, to ascribe to the publication a meaning or meanings which can be reasonably attributable to the language used therein only has effective and appropriate application when the publication is libelous per quod.

It appears that the trial below proceeded on the theory that the publication in question is libelous per se. As illustrative, we quote a paragraph from the oral charge of the court: "There cannot be a recovery, gentlemen, in this case for libel per quod, because there is no averment of special damages. The complaint claims general compensatory damages and punitive damages, which may be recovered only in an action for libel per se."

It is obvious that, if we follow the mind of the court below, the content of the innuendo becomes a matter of no concern as against the demurrers interposed.

We find many definitions for libel which have been stated by eminent jurists, text writers, and lexicographers. They vary somewhat in phraseology but are harmonious in meaning.

■ Newell, in his text on Slander and Libel, Third Edition, at page 36, gives, in our view, a very comprehensive and meaningful definition:

"It may be said that any publication, expressed either by printing or writing or by signs, pictures or effigies or the like, which tends to injure one's reputation in the common estimation of mankind, to throw contumely, shame or disgrace upon him, or which tends to hold him up to scorn, ridicule or contempt, or which is calculated to render him infamous, odious or ridiculous, is prima facie a libel, and implies malice in its publication. So, also, is any publication injurious to private character, or that reflects upon his character, or that injures social character, or that induces an ill opinion, or that imports a bad reputation; and so with all defamatory words injurious in their nature."

In Marion v. Davis, 217 Ala. 16, 114 So. 357, 358, 55 A.L.R. 171. Justice Brown observed:

"The right to the enjoyment of a private reputation, unassailed by malicious slander, is of ancient origin, and is necessary to human society. A good reputation is an element of personal security, and is protected by the Constitution equally with the right to the enjoyment of life, liberty, and property. * * * The foundation of an action for libel or slander is a malicious in-

jury to reputation, and any false and malicious imputation of crime or moral delinquency by one published of and concerning another, which subjects the person to disgrace, ridicule, odium, or contempt in the estimation of his friends and acquaintances, or the public, with resulting damage to his reputation, is actionable either per se or per quod."

See also, Iron Age Publishing Co. v. Crudup, 85 Ala. 519, 5 So. 332; Solverson v. Peterson, 64 Wis. 198, 25 N.W. 14, 54 Am. Rep. 607; 33 Am.Jur., Libel and Slander, Sec. 3, p. 38; 36 C.J., Libel and Slander, Sec. 3, p. 1143.

■ A written statement may be libelous although it does not contain an imputation of an offense that may be punishable as a crime. 33 Am.Jur., Libel and Slander, Sec. 45, p. 65; Hetherington v. Sterry, 28 Kan. 426, 42 Am.Rep. 169; Knapp v. Green, 123 Kan. 550, 124 Kan. 266, 256 P. 153, 259 P. 710., 55 A.L.R. 850.

■ It is apposite to note that a statement may be actionable as libelous when written or printed and yet not be so taken when spoken. The reason is apparent. Words may be spoken under such circumstances and conditions that impressions therefrom quickly pass out of the mind of the auditors. Not so with printed or written assertions. They are deemed to be more premeditated and deliberate, and certainly more permanent. In their very nature they are calculated to be more harmful. Iron Age Publishing Co. v. Crudup, supra.

■ Another canon of construction is to attribute to the publication the plain and natural meaning in which it appears to have been used and the ideas and connotations it is reasonably expected to convey to those who read it. A forced or unauthorized interpretation should not be accorded the writing in order to relieve its author of its execrable imputation.

■ To properly and fairly apply the rule just stated, it is necessary to read and interpret the instrument or placard in its entirety. This should be done in relation to the conception and opinion of the public at the time which and in the community where the publication appears. It is, therefore, impossible to set up or form a definite and determinable legal precedent for libel actions and make it conform to every case and circumstance. This, of course, is not taking into account actionable libel that is made specific by statute. Apart from statutory inhibitions and designations, norma loquendi is the rule to be applied in the interpretation of words. In truth, statements which in some past period may have imported libel may not in the present time and vice versa. 33 Am.Jur., Libel and Slander, Sec. 84, p. 97; 36 C.J., Libel and Slander, Sec. 21(2), p. 1155; Marion v. Davis, supra; Berry v. City of New York Ins. Co., 210 Ala. 369, 98 So. 290; Johnson v. Turner, 159 Ala. 356, 47 So. 570; Labor Review Publishing Co. v. Galliher, 153 Ala. 364, 45 So. 188, 15 Ann.Cas. 674; Downing v. Wilson, 36 Ala. 717; Kingsley v. Herald & Globe Association, 113 Vt. 272, 34 A.2d 99, 148 A.L.R. 1164.

In the time of Elizabeth it was actionable to call a person a witch. Rogers v. Cravat, Cro. Eliz. 571.

In the time of Charles II it was actionable libel to say of a person in publication that he was a Papist and that he went to Mass. Walden v. Mitchell, 2 Vent. 265. It was held otherwise in the reign of James I. Ireland v. Smith, 2 Brown & Gold. 166.

It has been held libelous per se to compare a person to an odious, foul, or despised animal—for example to publish of a person that he is a "skunk." Massuere v. Dickens, 70 Wis. 83, 35 N.W. 349.

The old English case of Hoare v. Silverlock, reported in 12 Jurist at page 695 is interesting. In the opinion of Judge Erle we observe: "It is easy to bring a person into contempt by the use of allegorical terms and allusions; and the question is as to the degree of knowledge which society possesses of the fable of the frozen snake, so that a publication, by referring to the frozen snake as applicable to the plaintiff, may be considered as imputing what is injurious to his character. It appears to me that I may take judicial notice that such knowledge prevails in society. The fourth count is clearly libelous."

■ It is also considered by the authorities to be libelous to make comparisons of

a person or his transactions with those of a disreputable, despicable, abject or contemptible individual, and this is true even though such person be merely a character in fiction.

The court in the case of Crocker v. Hadley, 102 Ind. 416, 1 N.E. 734, made this observation: "The published article is too long to be copied in this opinion; but it denounced the appellee as a 'hoary-headed filcher,' and charged that 'John C. Hadley has sold himself, Judas-like, for a few pieces of silver to sell his neighbors out.'" A judgment for the plaintiff was sustained on the basis that the publication was libelous per se.

In Solverson v. Peterson, 64 Wis. 198, 25 N.W. 14, 54 Am.Rep. 607, the following publication was held to be libelous per se. The plaintiff was described as: "'King of the Norwegians,—a character so mystical and eccentric that every one would be interested to hear from him.' 'He takes us back to the time when the star of human progress was just rising above the dark horizon of human ignorance; when the king of Babylon was changed into an ox and lived on grass.' 'But let us doubt such things no longer, when I tell you that at the present time this great king, in whose veins courses the blood of the ancient viking, has turned into an enormous swine, which lives on lame horses,' etc. 'He still retains the faculty of speech.' 'Great sympathy is felt for him by Norwegians all over the world, who keep sending him lame horses. Doctors say there is no hope for his recovery, and he will probably remain a swine the rest of his days.'"

A publication of the plaintiff's picture in a newspaper with an article setting forth the career of Guiseppe Musolino, an Italian brigand, bandit, and murderer, and placing the brigand's name beneath the plaintiff's portrait was held libelous although plaintiff lived in the United States and the article stated that the brigand lived in Italy. De-Sando v. New York Herald Co., 88 App. Div. 492, 85 N.Y.S. 111.

To publish of a person that he is an "anarchist" was adjudged to be libelous per se in Cerveny v. Chicago Daily News Co., 139 Ill. 345, 28 N.E. 692, 13 L.R.A. 864.

By frequent usage, many words and expressions have come into our language. Some of these may be correctly classified as "slang." The courts do not ignore the general acceptation of the meaning conveyed in the use of these words and expressions.

In Woodling v. Knickerbocker et al., 31 Minn. 268, 17 N.W. 387, the placard involved was placed on a table in front of defendant's shop. It read: "This was taken from Dr. Woodling, as he would not pay for it; for sale at a bargain," and also, and about two feet from it the following placard: "Moral: Beware of deadbeats." The court held that the two signs, read together, as they were undoubtedly intended to be, constituted gross libel; that "they are clearly defamatory on their face."

Justice Somerville, writing for our Supreme Court in Choctaw Coal & Mining Co. v. Lillich, 204 Ala. 533, 86 So. 383, 385, 11 A.L.R. 1014, held that in time of war it was libelous per se to publish that a person is a "slacker." The eminent jurist made this observation: "The word is not found in prewar lexicons, but had its genesis as to use and meaning in the conditions following our entrance into the World War, and in the exigencies of its successful prosecution. During the war it was unquestionably a term of the severest reproach, well understood by all men, and calculated to subject its bearer to hatred and contempt in practically every community in the land."

See also, Dusabek et al. v. Martz, 121 Okl. 241, 249 P. 145, 49 A.L.R. 260.

To charge a person with being a "'profiteer,' or the tool of 'profiteers'" was held libelous in Lunn v. Littauer, 187 App.Div. 808. 175 N.Y.S. 657, 658. The court said: "To be charged with lending one's self to the promotion of private interests at the expense of the national welfare—is to invite the hatred and contempt of people generally."

Stewart v. Swift Specific Co. et al., 76 Ga. 280, 2 Am.St.Rep. 40, is an example of the attitude of that court to statements in relation to libel, the tendencies and implications of which are to hold a person out to the public in ridicule and as "a sort of butt for laughter and fun."

■ The sign or placard in question appeared in public view on December 29, 1945. At this time the United States, with her allies, had not long since emerged from the bloodiest and most devastating war ever recorded in the annals of human experiences. American men and women numbering in the millions had been involved, and many were yet on military duty on land and sea. There was not a home in this country that was not affected by some aspect of the conflict. It was a matter of common knowledge that Hitler was the arch enemy of the allied forces. His ruthless tactics and inhuman practices had typified him as a man without due regard or just consideration of the rights of others. His name was directly connected with the horrors and griefs incident to the war. He was the impersonation of unjustified aggression, He was condemned and criticized in every newspaper and magazine. He was made the principal in effigies, cartoons, caricature, and burlesque. He had incurred the odium, scorn and hatred of every intelligent, patriotic American citizen. All of this, and perhaps more, formed a part of the common knowledge of every person of ordinary understanding in this country. This being true, it became a matter of judicial knowledge which did not require pleading or proof. 20 Am.Jur., Sec. 18, p. 49, Sec. 20, p. 51; 31 C.J.S., Evidence, § 6, p. 509, § 62, p. 639; Jobe-Rose Jewelry Co. v. City of Birmingham, 235 Ala. 178, 178 So. 215; Sovereign Camp, W. O. W. v. Allen, 206 Ala. 41, 89 So. 58; Swinnerton et al. v. Columbian Ins. Co., 37 N.Y. 174, 93 Am.Dec. 560.

■ We copy the fifth headnote in the case of United States v. Kusche, D.C., 56 F.Supp. 201: "The court could take judicial notice of fact that when Hitler came to power in 1933 he suspended the personal liberty provisions of the Weimar Constitution of 1919 and thereafter established an absolute dictatorship based on tenets of national socialism."

■ At the risk of extending this opinion to undue length, we have given much space to a treatment of the instant inquiry. Our purpose is to attempt to illustrate our considered conclusion that the publication in question is libelous per se, and there-fore the demurrers, which take the position that the averments of the innuendo were unauthorized, were properly overruled. Authorities, supra.

■ The offices of a motion to strike and demurrers are different. The former attack makes effort to rid the pleading of unnecessary prolixity and to confine the allegations within the intent of Sec. 212, Title 7, Code 1940. The latter approach is to test the sufficiency of the pleadings. National Union Fire Ins. Co. v. Morgan, 231 Ala. 640, 166 So. 24; Dalton v. Bunn & Allison, 137 Ala. 175, 34 So. 841.

We entertain the view that a failure to apply the "judicial guillotine" in the instant case did not result in any substantial harm to appellant.

■ The demurrers also take the position that the alternative averments of the count of the complaint are not sufficiently stated, and this against the rule that each alternative averment of itself must state a good cause of action. Birmingham Ry., L. & P. Co. v. Nicholas, 181 Ala. 491, 61 So. 361.

■ The case presented by the evidence and the oral charge of the court focused liability vel non on the defendant with either posting and publishing the sign or a ratification of the act. If there was error in overruling the demurrers to any aspect of the complaint not consonant with either of the theories just indicated, it was without injury to appellant. Choctaw Coal & Mining Co. v. Lillich, supra.

It is not contended in brief of counsel that the principle of ratification has no application, but it is cogently urged that in an effort to allege or charge ratification in the alternative the pleader has omitted to set out sufficient facts in support thereof.

In Choctaw Coal & Mining Co. v. Lillich, supra, the court held: "Had the company been advised of the writing, and that it was done by its servant in its behalf, its failure to repudiate the act with reasonable promptness would no doubt have amounted to approval and ratification."

The Supreme Court of Minnesota in Woodling v. Knickerbocker et al., cited supra, observed: "As to George Knickerbocker and Layman, there was evidence to

go to the jury—pretty strong evidence—that George Knickerbocker either placed or incited others to place all the placards on the table; and from the fact that Layman was present and saw certainly the last two placards, knew they were put on his property by one of his servants, and acquiesced in George Knickerbocker's refusal to move them at plaintiff's request, the jury might well conclude that all were placed on the table either by his express authority or his assent. Though there was evidence to a contrary effect, still the case ought to have gone to the jury. To hold either of the defendants, it was not necessary that the placards should have been placed on the table with his own hand. If he authorized, incited, or encouraged any other person to do it; or if, having authority to forbid it, he permitted it; or, having authority to remove them, he allowed them to remain,—the act was his."

See also, Pennsylvania Iron Works Co. v. Henry Vogt Machinery Co., 139 Ky. 497, 96 S.W. 551, 8 L.R.A.,N.S., 1023.

■ When the count of the complaint is considered in its entirety, we entertain the view that there are sufficient facts therein alleged to charge ratification.

The trial court sustained demurrers to special pleas 8 and 9. These pleas attempt to set off or recoup against the demands of the plaintiff a claim for damages hypothesized on an alleged trespass to property. The facts set up in the pleas show clearly that they do not grow out of or in any way form a part of the subject matter of the claim made by the original complaint.

■ If the pleas are to be taken as set-off, they were subject to demurrer for the reason they sounded in damages merely. Title 7, Sec. 350 and Sec. 351, Code 1940.

■ They are faulty as pleas in recoupment for as such they must be confined to the particular transaction which formed the basis of plaintiff's claim or at least so closely akin thereto as to be considered a part thereof. Carolina-Portland Cement Co. v. Alabama Construction Co., 162 Ala. 380, 50 So. 332.

Over timely objections of appellant's counsel, the trial court allowed several witnesses to give evidence of Hitler's reputation in the City of Moundville.

We have made effort to illustrate herein that Hitler's reputation in every community in this country at the time in question was a matter of common knowledge. Assuming for the moment that this line of evidence was not admissible, did its introduction inure to the substantial injury of appellant?

If our conclusions are sound, the proof of these facts was not required. Authorities, supra.

■ We have a long line of authorities which hold that it is not reversible error to admit immaterial evidence if it is not prejudicial. They are noted in 2 Ala. Dig., Appeal and Error, ⊙═1050.

This court held in DeBardeleben v. Sellers, 17 Ala.App. 247, 84 So. 403, 405, that "proof of common knowledge is without injury, though it be unnecessary to offer such proof."

See also, Norwood Clinic, Inc., v. Spann, 240 Ala. 427, 199 So. 840; Stewart v. Sloss-Sheffield Steel & Iron Co., 170 Ala. 544, 54 So. 48, Ann.Cas.1912D, 815; Birmingham Furnace & Mfg. Co. v. Gross, 97 Ala. 220, 221, 12 So. 36; Brinkley & Lasseter v. Norfolk So. R. Co., 168 N.C. 428, 84 S.E. 700; 5 C.J.S., Appeal and Error, § 1724, subsec. c., p. 967.

■ It is our view that it is consonant with reason, logic, and authority to hold that if the evidence under review was inadmissible, its introduction could not result in substantial harm to appellant. The information the evidence conveyed did not add to the jury's knowledge concerning the matter and did not apprise them of facts which were not already known. Supreme Court Rule 45, Code 1940, Tit. 7 Appendix, has application here.

On cross examination of the witness George Davis, the court sustained appellant's objection to this question: "Do you know whether or not she had been at death's door for several days?"

This inquiry related to the condition of appellant's wife on the occasion that the witness went to appellant's home with a note from appellee, in which it was re-

quested that the sign be forthwith removed. In answer to the question just preceding the above, Mr. Davis stated: "He (appellant) said, 'George, my wife is sick; don't bother me any more tonight.'" It was established without dispute in the evidence that Mrs. Tidmore was ill the night in question. The non-expert witness was not in position to know the seriousness of her illness, and whether or not she had been at "death's door" for several days sought information that was unauthorized so far as the witness was concerned. Such information, if he had it, would have been acquired by hearsay.

Much latitude should be given on cross examination, but the court will not be cast in error for denying the privilege when it appears certain that the witness is not in position to disclose the facts sought. Alabama Power Co. v. Dunlap, 240 Ala. 568, 200 So. 617; Sanders v. State, 243 Ala. 691, 11 So.2d 740.

Assignments of error numbered 51, 52, and 54 are each grouped in argument with other assignments which have had our attention hereinabove. This being the case, we will pretermit treatment of these insistences. Moseley v. Alabama Power Co., 246 Ala. 416, 21 So.2d 305; Ogburn v. Montague, 26 Ala.App. 166, 155 So. 633.

In qualifying the jurors to try the cause it was made known to the court that some of the veniremen were related to Mr. Virgil Davis. The judge refused to grant a challenge for this cause at the instance of appellant's counsel. It appears that Mr. Davis was an officer in the Farmers Bonded Warehouse Company, and it was this concern that was made the defendant in the suit growing out of the storage of the nine bales of cotton and which cause terminated successfully to appellant. We gather from the record that Mr. Davis, also, had a case sub judice against the appellant for libel which was based on the same publication in question. He was a witness in the case at bar.

The reasons indicated did not constitute grounds to disqualify the jurors for cause. Title 30, Sec. 55, Code 1940; Rakestraw v. State, 22 Ala.App. 487, 116 So. 414; Nix v. City of Andalusia, 21 Ala.App. 439, 109 So. 182.

The court sustained objections of appellant's counsel when effort was made to have Mr. Henry Tidmore, brother of the defendant below, demonstrate to the jury and court whether or not he could straighten out his hands. It was contended that this witness owned the barn at the time the placard appeared thereon, and to attempt to explain why the appellant had worked on the building several times prior thereto it was sought to show that Mr. Henry Tidmore was physically incapacitated to do manual labor.

The jury was furnished ample evidence to determine the extent of the physical handicap of the witness. In fact, there was no dispute about it. He testified prior and subsequent to the instance under review that he had rheumatism and arthritis; that he was in bed four weeks and on crutches for some time following; that he was not able to do carpenter work "then or now." To have shown the jury that he could not straighten out his hands would have added little value to the inquiry, and to be sure the appellant was not substantially injured by the denial. Supreme Court Rule 45; Borden & Co. v. Vinegar Bend Lumber Co., 7 Ala.App. 335, 62 So. 254; Butler v. State, 16 Ala.App. 234, 77 So. 72; Parsons v. State, 32 Ala.App. 266, 25 So.2d 44.

The observation we have just made will apply with equal force and effect to the insistence made by assignment of error No. 50. The court disallowed the appellant on direct examination to answer this question: "At any time during 1945 and up to the time you bought, did you have exclusive custody and control of that building?" With reference to this inquiry appellant, without objections, testified that a while before Christmas he began locking the building at the request of the owner, his brother; that he (appellant) did not have charge of the building any time during 1945; that his brother, W. H. Tidmore, had charge of it during this time; that all he did in connection with the building was done at the request of his brother, for which service he was paid. It can be

noted also that Mr. W. H. Tidmore gave evidence of like import.

Defendant below sought to prove that the reputation of the plaintiff below was good in the community in which he lived and that this estimate extended up to the time of the trial in the lower court. As indicated by the record and declared in oral argument and brief of counsel, this offer was made on the theory and for the purpose of showing that the plaintiff had not, in fact, been damaged in reputation by the publication or at least it was competent in mitigation of damages.

We do not find that this precise question has been before our courts. Counsel must have encountered the same difficulty, since no authorities are cited in support of the position.

There are, of course, general rules applicable to damage assessments in libel cases. If the publication is libelous per se the law presumes damages to the reputation as a natural and probable consequence, and this without proof thereof. Marion v. Davis, 217 Ala. 16, 114 So. 357, 55 A.L.R. 171; Starks v. Comer, 190 Ala. 245, 67 So. 440; Advertiser Co. v. Jones, 169 Ala. 196, 53 So. 759.

Our courts have considered the propriety of the introduction of the general character of the plaintiff in libel actions from a very different approach and purpose from those attempted in the instant case.

In Phillips v. Bradshaw, 167 Ala. 199, 52 So. 662, 665, Justice Sayre, writing for the court, observed: "But the gist of the action was a false and malicious injury to plaintiff's character, and, in addition to the presumption in his favor, the *plaintiff* might show his good character and the falsity of the charge made against him as proving malice in fact and as affecting the measure of recovery." (Emphasis ours.)

See also, Nations v. Harris, 214 Ala. 339, 108 So. 29; Hereford v. Combs, 126 Ala. 369, 28 So. 582; Webb v. Gray, 181 Ala. 408, 62 So. 194.

A review of the authorities will unquestionably show that the general, character evidence of the plaintiff in libel cases is justified and approved for purposes and reasons in no way related or concomitant to those for which the evidence in the case at bar was tendered.

We entertain the view that it would be anomalous conclusion for us to sanction the introduction of the evidence under review. To do so would have the effect of destroying, or at least seriously jeopardizing, the prevailing presumption of injury to reputation in the publication of a libelous statement.

Mr. Henry Tidmore testified that he sold the barn to David and Arch Tidmore in February, 1946. This was made further evident by the introduction of the deed which conveyed the property. Whether or not the grantor discussed with the grantees the matter of the sale or whether he went to a lawyer to have the deed prepared was merely accumulative in view of the evidence that the sale was, in fact, made and the deed prepared and delivered. Certainly, the denial in evidence of the details of the transaction could not in any manner injure the rights of appellant in the face of the disclosed facts. Johnson v. State, 15 Ala.App. 75, 72 So. 561; Scott v. State, 15 Ala.App. 267, 73 So. 212.

Charges X and Y, refused to appellant, were fairly and substantially covered by the court's oral charge. Perhaps not in exact verbiage, but, taking the oral charge in its entirety together with given charge D, there can be left no doubt that the jury was fully and ably instructed concerning the burden of plaintiff to make proof of each material allegation of the count of the complaint. Title 7, Sec. 273, Code 1940; Wood v. Hacker, 23 Ala.App. 12, 121 So. 437.

In both oral argument and brief of counsel, cogent insistence is made that the defendant was due the general affirmative charge. This question is often before the appellate courts. The rules by which we are guided have been paraphrased in various terms.

In McMillan v. Aiken, 205 Ala. 35, 88 So. 135, 139, Justice Thomas, writing for the court, pronounced this rule: "It is only when there is no evidence tending to establish plaintiff's case that the court may direct a verdict for defendant." This

statement is followed by the citation of a long list of authorities and excerpts from many of them. To add to this well selected collection would amount to no more than an accumulation of repetitions.

As indicated heretofore, the liability of the defendant was presented primarily in two factual aspects. We will not attempt to delineate the tendencies of all the evidence.

It is evinced that appellant did not have a deed to the barn until in February, 1946; however there is testimony the tendencies of which indicate that he was making some claims of ownership prior to the time in question. Be this as it may, there certainly was substantial evidence from which the jury was privileged to find that he exercised the right to the free use of the building. The mere fact that he selected the barn as a storage place for his reclaimed cotton tended strongly to establish his usage favors. He would not have very likely thus imposed a right he did not have.

When the truckman delivered the nine bales of cotton after the termination of the suit therefor, appellant directed that it be placed in the front doorway of the barn. Whatever may have been the contemplated purpose or plan, or the reason for the direction, it cannot be questioned that the positioning made a suitable and an appropriate setting for a placement of the sign or placard which appeared a few days later.

It is without dispute that appellant bought some osnaburg of the kind on which the publication was printed and that he borrowed a small paint brush. These incidents occurred a short time prior to the appearance of the publication.

Appellee sent two notes to appellant requesting or demanding in each that the sign be forthwith removed. With reference to the first of these, the messenger testified that the addressee orally replied: "I will let them know." When the second note was delivered a few hours later, appellant asserted: "George, my wife is sick, and you leave here; don't you come back here no more tonight."

After the second note was delivered, appellant went to the barber shop downtown near the location of the barn. The sign remained posted on the building from Friday night or early Saturday morning until the following Monday morning. Appellant admitted that he saw the sign on the barn Saturday morning. The two notes referred to above were carried to appellant's home Saturday night.

We have not attempted to set out the conflicts in the evidence or explanations made by the appellant. This is not necessary for illustrative review of the question in hand. In considering the propriety vel non of the refusal of the general affirmative charge, the court must accept as true the evidence offered by the party against whom affirmative instruction is directed and accord to him all legitimate inferences therefrom. McGowin Lbr. & Exp. Co. v. McDonald Lbr. Co., 186 Ala. 580, 64 So. 787; New Morgan County Bldg. & Loan Association v. Plemmons, 210 Ala. 286, 98 So. 12; Rooks v. Swift & Co., 210 Ala. 364, 98 So. 16; City of Birmingham v. Coe, 31 Ala.App. 538, 20 So.2d 110.

We have given careful study and due consideration to all the evidence in the instant case, and we find ourselves in harmony with the action of the primary court in his refusal of the affirmative charge in defendant's behalf.

It is our view, also, that we should not disturb the action of the lower court in his denial of the motion for a new trial. Here two insistences are posed, that the verdict of the jury was contrary to the great preponderance of the evidence, and that the verdict of $900 was excessive.

As to the first ground, we cannot see in what way it will be informative or helpful for us to attempt to illustrate the reasons for our opinion that we should not disturb the ruling of the lower court. The authorities which state the applicable rules are legion. We cite a few: Kurn et al. v. Counts, 247 Ala. 129, 22 So.2d 725; Brotherhood of Locomotive Firemen and Eng. v. Milner, 193 Ala. 68, 69 So. 10; Cobb v. Malone & Collins, 92 Ala. 630, 9 So. 738; Sorrell v. Lindsey et al., 247 Ala. 630, 25 So.2d 725; Montgomery City Lines v. Hawes, 31 Ala.App. 564, 20 So.2d

258

536; Taylor v. State, 30 Ala.App. 316, 5 So.2d 117.

 As to the second indicated ground, we will be content to rest our view upon the citation of several cases in which verdicts in larger amounts have been sustained by the appellate courts. By comparison, it will be found that our opinion is well supported by adjudicated cases based on libel actions. The list of authorities, with amounts of verdicts, follows: $1375, Meyer v. Press Publishing Co., 46 N.Y.Super.Ct. 127; $1400, Root v. King, 7 Cow.N.Y., 613; $2000, Bowe v. Rogers, 50 Wis. 598, 7 N.W. 547; $2500, Storey v. Wallace, 60 Ill. 51; $5000, Advertiser Co. v. Jones, 169 Ala. 196, 53 So. 759; $8000, Sweeney v. Baker, 13 W.Va. 158, 31 Am.Rep. 757; $10000, Stafford v. Morning Journal Association, 68 Hun. 467, 22 N.Y.S. 1008.

We have responded to each insistence presented by the assignments of error.

We order that the judgment of the nisi prius court be affirmed.

Affirmed.