237 So.2d 482

Mrs. Ludell MANN

v.

TIRE ENGINEERS, INC., a Corp., and Joe
Brocato d/b/a Brocato Shell Serv-
ice Station.

R. C. MANN

v.

TIRE ENGINEERS, INC., a Corp., and Joe
Brocato d/b/a Brocato Shell Serv-
ice Station.

6 Div. 662, 662–A.

Supreme Court of Alabama.

July 2, 1970.

Rehearing Denied July 30, 1970.

George S. Brown, Birmingham, for ap-
pellants.

**94**

Maurice F. Bishop, Birmingham, for appellees.

HARWOOD, Justice.

Mr. and Mrs. John A. Shalhoop and Mr. and Mrs. R. C. Mann, the parents of Mrs. Shalhoop, were returning to Birmingham from a trip to Panama City, Florida. They were in a Chevrolet Corvair owned by the Shalhoops and at the time was being operated by Mr. Shalhoop. A few miles south of Alabaster, in Jefferson County, the recapped left rear tire of the Corvair deflated almost instantaneously. Mr. Shalhoop at the time was passing another vehicle. His speed was between 65 to 70 miles per hour. The Corvair began to swerve down the road, overturned, and rolled some distance thereafter. All of the occupants of the Corvair received injuries, Mrs. Mann's being quite serious.

Thereafter Mr. and Mrs. Mann, and Mr. and Mrs. Shalhoop filed separate and individual suits against the appellees Tire Engineers, Inc., and Joe Brocato, etc., seeking damages resulting from the accident.

The complaints in the Mann cases aver that the appellee, Tire Engineers, Inc., was engaged in the business of recapping tires for sale to the public, and was under a duty to members of the public to recap tires in such fashion that they would not be imminently dangerous when used as intended; that the appellee Joe Brocato,

doing business as Brocato Shell Service Station, was engaged in the business of selling recapped tires to the public, and was under the duty to make a reasonable inspection of tires offered for sale to the public to see that they were not imminently or inherently dangerous when used for the purpose intended.

The complaints go on to allege that the recapped tires on one of the wheels of the automobile in which Mrs. Mann was riding when injured, was negligently recapped by Tire Engineers, Inc., and by them negligently sold to Joe Brocato for resale to the public; that Brocato sold and installed the tire on the Shaloop automobile; that the tire was imminently or inherently dangerous, which both appellees knew, or could have discovered by reasonable inspection in the exercise of ordinary care, etc. The complaints then set forth the injuries incurred by the respective plaintiffs, and aver that such injuries were proximately caused by the concurring negligence of both of the defendants (appellees).

The four cases were consolidated for trial.

In the trial below the evidence presented by the plaintiffs was directed to showing that the sudden deflation of the tire resulted from a blowout caused by a defective recapping of the tire.

The evidence presented by the defendants was to the effect that the tire had a hole in it which was not large enough to have caused a sudden deflation, and that there was also a substantial cut in the tire as well, which would have resulted in an instantaneous deflation of the tire, and further, that this cut in the tire appeared to have been made by the tire striking some hard object at high speed.

Several expert witnesses testified at considerable length for each side in an effort to establish the respective contentions.

The jury returned verdicts in favor of the defendants in each of the four cases.

Appellants' motions for a new trial being overruled, Mr. and Mrs. Mann perfected their appeals to this court. In their brief counsel for appellants have asserted and argued two points as constituting error in the proceedings below.

■ The first point is that the court erred in overruling appellants request to strike for cause juror Hayden from the jury list. It appears that Mr. Hayden is a banker, and one of the witnesses whom the defendants had announced they intended to call, was a customer of the bank where Mr. Hayden was employed.

The record shows that in addressing the venire of jurors, previous to this trial, the court instructed the jurors as follows:

"I have a great deal of confidence in our people and I believe that the average person comes in here to serve as jurors and they want to be absolutely impartial and be able to arrive at a sound judgment about what the truth is, I believe that. I have great confidence in it. Now, what I want to know of you is, do you know of anything, knowing who the parties are and the lawyers and what sort of thing it was, do you know of anything that you believe might very well pull you to one side and keep you from being a fair and impartial juror. In other words, if you had heard something about this case, do you know of anything which you believe that probably would pull you to one side or the other, in spite of yourself. If you know of anything of that sort, or if you have ever been involved in a litigation which you think is pretty closely a parallel to this, and if you have had any experience with any cases of this type, if you know of anything that would pull you to one side or another, I think you should raise your hand."

Two of the jurors on the panel made statements in view of the above instructions and were excused from the panel. They were replaced by Hayden and another juror, who were extra jurors. In re-

sponse as to whether he would be affected by any of the matters mentioned in the general instructions already given, the juror Hayden answered in the negative.

Counsel for the appellants thereafter examined various members of the jury as to matters going to their possible disqualifications for cause. As to the juror Hayden, the record shows that in response to questions addressed to him by appellants' counsel, he stated that he had known William Rowe (the prospective witness for the appellees) for some four or five years, he having been a good customer of the bank at which Hayden was employed for that length of time. Hayden's examination continued on as follows:

"Mr. Hogan: All right. Now, Mr. Hayden, do you think that on a close question that you might lean to that side?

"Mr. Hayden: I consider him a good tire man, I would have to rely possibly, on his testimony, as to whether the point in question was accurate or not.

"Mr. Hogan: And knowing him as you do, on a question perhaps on the side of the plaintiff, if there would be testimony from someone whom you did not know, *do you think that possibly that might influence your decision in his favor?*

"Mr. Hayden: *Well, I wouldn't exactly put it that way.* If it was a technical point, I would think that I would lean on his judgment there as to whether or not the testimony was correct. *Now, as to leaning in his favor, that would not make any difference to me,* but I would have to assume that this gentleman knows what he is talking about.

"Mr. Hogan: Well, you would give his testimony more credit for the very fact of the knowledge of his ability?

"Mr. Hayden: Well, more than someone I could not question myself." (Emphasis ours.)

Interpreting Hayden's statements in their full context, it appears to us that Hayden stated substantially that he had known Rowe as a customer of the bank for some four or five years and considered him a good tire man. He would possibly rely on his testimony as to whether a point in question was accurate. As to whether his knowledge of Rowe might possibly influence his decision in favor of Rowe's testimony, Hayden "wouldn't exactly put it that way." He would lean on Rowe's judgment on a technical point, but *"as to leaning in his favor, that would not make any difference to me, but I would have to assume that this gentleman knows what he is talking about."* (Emphasis ours.)

All in all, it cannot be concluded that Hayden's testimony imported absolute bias or favor in regard to Rowe's possible testimony, but on the other hand inferred he would consider Rowe's testimony without leaning in his favor, and the fact that he favorably knew Rowe and would assume he knew what he was talking about, "that would not make any difference to me."

The rule governing the point now under consideration is set forth in Brown v. Woolverton, 219 Ala. 112, 121 So. 404, as follows:

"To justify a challenge for principal cause there must be a statutory ground, or some matter which imports absolute bias or favor, and leaves nothing for the discretion of the court. 16 R.C.L. 255. 'Competency under a statute (or for principal cause at common law) is a question of law, but in other cases is a question of fact, or a mixed question of law and fact, to be determined by the trial court in the exercise of a sound discretion, and its decision will not be interfered with, unless clearly shown to have been abused.' 35 C.J. 312.

"A challenge for favor or bias is to be determined by the trial court as any other question of fact, tried without a jury, and is reviewable on like principles. 35 Corpus Juris, 312, 403, 404; 16 R.C.L.

279, 282, 288; Calhoun v. Hannan, 87 Ala. 277, 6 So. 291; Larkin v. Baty, 111 Ala. 303, 307, 18 So. 666. The decision of the trial court on such question founded on oral evidence is entitled to great weight and will not be interfered with unless clearly erroneous, equivalent to an abuse of discretion. 35 Corpus Juris, 404, 405; 16 R.C.L. 289."

For analogous authority see Long v. State, 86 Ala. 36, 5 So. 443; Peterson v. State, 227 Ala. 361, 150 So. 156; Tidmore v. Mills, 33 Ala.App. 243, 32 So.2d 769; Wyatt v. State, 36 Ala.App. 125, 57 So.2d 350.

In Kelly v. Gulf Oil Co., D.C., 28 F. Supp. 205, affd. 3rd C.C.A., 105 F.2d 1018, one of the defendant's medical witnesses was at the time of the trial attending the wife of one of the jurors. In holding that this situation would not disqualify the juror, the court wrote:

"I know of no rule which disqualifies a juror because of acquaintance, or even professional relationship, with a witness for one of the parties. Indeed it might well be urged that on the contrary such knowledge would assist a juror in appraising the credibility of the witness."

We hold no error resulted in the court's action in refusing to disqualify for cause the juror Hayden.

■ The second point urged by appellant for reversal of the judgment relates to the refusal of the following charge requested by appellants:

"1. I charge you, Ladies and Gentlemen of the Jury, that you cannot return a verdict for the defendants, or either of them, upon the defense asserted under

Plea 3 of the defendants." (Plea 3 was a plea of contributory negligence.)

The record shows that the court had sustained the demurrer to Plea 3 in each case.

The record further shows that during his oral instructions the court instructed the jury as follows in reference to Plea 3:

"This is Mrs. Ludell Mann against these individuals and company. I have marked a cross over there opposite the plea, plea three, a cross by it. That means that there are, as far as she is concerned, that's not in there. * * * so all that you have got in her case would be pleas one and plea two. * * *" (Pleas one and two were pleas of the general issue, and the court gave detailed instructions as to the meaning and effect of these two pleas.)

\*      \*      \*      \*      \*      \*

"Now, that leaves only the one. R. C. Mann. In his case, without going into any great lengths, all of those pleas have the cross beside them except one and two and one and two are the ones in which they deny what he says to be true, and I have given you the meaning of that already."

At the conclusion of his oral instructions to the jury, the court inquired of counsel if he had overlooked anything, and if there were any exceptions "to the court's oral charge as it stands presently?"

To this inquiry counsel for appellant replied, "Satisfied."

Demurrers to Plea 3 having been sustained, and the court having instructed the jury that Plea 3 was out, appellants' refused charge 1 was abstract under the issues presented.

Counsel for appellants argue that the court's oral instructions in reference to the elimination of Plea 3 could only have resulted in confusing the jury. We are not in accord with this view. The language of the court was plain, simple, and clear, and fully covered the instructions to the jury on the very point sought to be enunciated in charge 1.

Further, charges which make reference to pleas or replications by number, instead

**98**

of stating the substance of the matter set out in the numbered pleading, have repeatedly been condemned by this court and their refusal held proper. The reason being that charges in this form would require the jurors to scrutinize and interpret the pleadings, compare the evidence with the pleading and determine which pleas have or have not been proven. Pennsylvania Fire Ins. Co. v. Draper, 187 Ala. 103, 65 So. 923; Alabama Great Southern R. R. Co. v. McWhorter, 156 Ala. 269, 47 So. 84; Woodward Iron Co. v. Williams, 207 Ala. 600, 93 So. 523.

No error resulted to the appellants because of the refusal of their requested charge 1.

■ Counsel for appellee, Tire Engineers, Inc., has filed a motion to dismiss this appeal on the ground that only two of the four plaintiffs have appealed, and no citation of appeal was served on the two non-appealing plaintiffs. Counsel cites Section 804, Title 7, Code of Alabama 1940, and several cases construing this section, in support of the motion for dismissal.

As pointed out in Maya Corp. v. Smith, 240 Ala. 371, 199 So. 549, Section 804 made a change in the rule theretofore existing that an appeal had to be sued out in the name of all the parties against whom a *joint* judment was rendered. If one of the joint parties refused to participate in the joint right of appeal, then the practice was to obtain from this court an order for a summons to the non-participants that they might join in the assignments of error if they wished. On failure to do so, this court would allow a severance so that those who did join in the appeal might have the benefit of errors jointly available to all.

Section 804 made a change in that practice so that now an appeal may be taken in the name of only one in case of a joint judgment, in which event the clerk shall issue a summons to the other joint parties. Even without the statute a party aggrieved by a judgment or decree could appeal when their interests were not joint. At no time is a severance of the parties necessary when there is no joint interest in the appeal.

Here a separate complaint was filed by each plaintiff seeking damages for his or her own individual injuries. Separate demurrers and pleas were filed to each respective complaint. The cases, all arising out of the same facts, were consolidated for trial. This was permissible under Section 221, Title 7, Code of Alabama 1940, which section relates to consolidation of causes in counties of three hundred thousand population or more. In instructing the jury as to the verdicts they could return, the court informed the jury that in the event they found in favor of both defendants, a verdict in favor of the defendants would be proper. Such verdict was returned, and separate judgments were rendered in each case. Separate motions for a new trial were filed and ruled on separately.

These two appellants perfected their appeals separately and the assignments of error are separate, though consolidated.

This method of consolidation did not destroy the identity of the several causes of action, or combine them into one suit. Ex parte Mount, 242 Ala. 174, 5 So.2d 637.

The motion to dismiss is denied. The judgment is, however, due to be affirmed, and it is so ordered.

Affirmed.

LIVINGSTON, C. J., and LAWSON, MERRILL and MADDOX, JJ., concur.